## LOUISA HAFNER v. ST. LOUIS TRANSIT COMPANY, Appellant.*

**Division One, June 19, 1906.**

**NEGLIGENCE: Concurrent: Crossing Street Car Track: Obstructed View.** It is negligence for a motorman to run his car at a high rate of speed to a crossing where pedestrians are liable to be, when his view of the crossing is so obstructed by a passing wagon that he cannot see whether or not the street crossing is clear; but it is also negligence in a full-grown man to approach a railroad track from behind a wagon which so obstructs his view that he cannot see whether or not a car that he knows is liable to be coming is actually coming and to enter upon the track without looking or pausing until the obstruction to his view has passed. And when the negligence of the motorman and of the pedestrian combine, in those respects, to produce the injury to the pedestrian, the street railway company is not liable.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

Reversed.

*J. W. Jamison* with *Boyle & Priest* for appellant.

The demurrers to plaintiff's evidence and to all the evidence should have been sustained. First. Plaintiff failed to prove any substantial negligence whatever. Kennedy v. Railroad, 43 Mo. App. 1; Edwards v. Ins. Co., 100 Mo. App. 712; Hanselman v. Railroad, 88 Mo. App. 123; Heyde v. Railroad, 110 Mo. 272. Second. The evidence shows conclusively that

---

*Note.—This case should be read in connection with Mullin v. Transit Co., 196 Mo. 572, as they illustrate the difference between contributory negligence in a child and in a man under like circumstances. The opinion in each case was handed down the same day, but as a motion for rehearing was filed in this case, the Reporter was compelled to give it the date that motion was overruled.

deceased in going upon the track stepped from immediately behind a large wagon that was loaded with boxes, and which shut off his view of the car, and went upon the track when the car was so close to him that it was impossible for the motorman, with the means and appliances at his command, to prevent the collision, and that deceased was struck and injured by reason of his failure to exercise reasonable care under the circumstances and surroundings to look and listen for the car. Moore v. Railroad, 176 Mo. 528; Guyer v. Railroad, 174 Mo. 344; Barrie v. Transit Co., 102 Mo. App. 87; Hook v. Railroad, 162 Mo. 569; Tanner v. Railroad, 161 Mo. 497; Kreis v. Railroad, 148 Mo. 321; Grocer Co. v. Railroad, 89 Mo. App. 534; Watson v. Railroad, 133 Mo. 250; Molyneaux v. Railroad, 81 Mo. App. 25; Hayden v. Railroad, 124 Mo. 566.

*A. R. Taylor* for respondent.

(1) The evidence made a case for the jury. Where a person, through the negligence of another, is put in a position of peril, the fact that he or she does not choose the wisest or safest mode of escape from such peril is not negligence as a matter of law. Kleiber v. Railroad, 107 Mo. 263; Bischoff v. Railroad, 121 Mo. 225; DeBolt v. Railroad, 123 Mo. 521; McPeak v. Railroad, 128 Mo. 651. (2) A person crossing a railway track in the street has a right, in determining his action, to expect, until the contrary appears, that a car will be operated in obedience to law. Hutchinson v. Railroad, 161 Mo. 256; Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 180 Mo. 191; Eckhard v. Railroad, 190 Mo. 613.

VALLIANT, J.—Plaintiff's husband was struck and killed by a car on defendant's street railroad and she brings this suit under section 2864, Revised Stat-

utes 1899, to recover $5,000 damages. The petition charges negligence as at common law of the defendant's servants in operating the car, and pleads also the Vigilant Watch ordinance and negligence in failing to observe it.

The negligence charged, as independent of the ordinance, was failure to use care to watch for persons on the crossing or moving towards it in danger of the car, failure to use care to stop the car and failure to give signal of its approach. The negligence charged as under the ordinance was in failing to keep the watch and failing to stop the car on the first appearance of danger in the shortest time and space possible. The answer was a general denial and a plea of contributory negligence.

The trial resulted in a verdict and judgment for the plaintiff for $5,000, from which defendant appeals.

The testimony in behalf of the plaintiff tended to show as follows:

Defendant operates a double-track street railroad in Jefferson avenue; the cars are propelled by electricity. The general course of Jefferson avenue at the place of the accident is north and south. University street, running east and west, crosses Jefferson avenue at right angles. Plaintiff's husband was a barber, fifty-three years old, a stout, heavy man, weighing about 250 pounds, and rather short of stature. He lived in the vicinity of this crossing.

At the time of the accident he was aiming to cross from the west to the east side of Jefferson avenue along the south line of University street. When he was yet on the west side of Jefferson avenue, between the sidewalk and defendant's west track, plaintiff's witness, who stood at the northwest corner of Jefferson avenue and University street, saw a car of defendant south of the crossing coming north on the east track at a distance estimated by the witness to be seventy-five or one hundred feet from the south crossing, the wit-

ness judged it to be coming at the rate of twelve or fif-
teen miles an hour.   There was at the time a procession
of wagons, three, four or five, moving south along the
west track of defendant's road.    These wagons were
equipped for hauling sand, each had a bed about a foot
or a foot and a half high, the tops of the wagon beds
were about as high as plaintiff's husband's shoulders.
After two or three of these wagons had passed him, the
plaintiff's husband started across the street just be-
hind one and in front of another, he passed over the
west track, crossed the space between the  tracks,
stepped on the east track and to the middle of it, when
he looked and saw the coming car, he hesitated a mo-
ment, then attempted to step back, but before he got
out of the line of the car he was struck by the west cor-
ner of the dash-board, thrown under the wheels and
killed.   When he stepped on the east track the car was
about thirty-five feet from him.   The car stopped in
thirty or thirty-five feet of the point of the accident.
Plaintiff's testimony also tended to show that the mo-
torman was paying attention to some girls on the side-
walk and neglecting to attend to his car and that there
was no gong sounded.   A city ordinance limiting the
rate of speed of cars to eight miles an hour was put in
evidence over the objection of defendant, the ordinance
not having been pleaded.

    At the close of the plaintiff's case defendant asked
an instruction in the nature of a demurrer to the evi-
dence which the court refused and defendant excepted.

    The evidence in behalf of the defendant tended
to show as follows:

    The car turned into Jefferson avenue one block
south of University street and stopped there to dis-
charge a passenger, then started on towards Univer-
sity street, gaining a speed of about ten miles an hour,
the motorman saw the procession of wagons and rang
his gong vigorously and continuously to warn the driv-
ers of the wagons, he received a signal from the con-

ductor or a passenger to stop at University street and slowed down with a view to stopping at the north line of University street, and was running four or five miles an hour. Besides the sand wagons there was also a wagon loaded with boxes so high that he could not see a man behind it; just as the car came alongside this box wagon the plaintiff's husband came out from behind it and stepped on the track within a few feet of the car, the motorman holloed to him, sounded the gong, applied the brakes and did everything possible to avert the accident but could not do so, he stopped the car within ten feet, but it was too late. Defendant's testimony also tended to show that the motorman was not noticing the girls but was attending to his duty.

Plaintiff had but one witness to the accident and he stood at the northwest corner of the intersecting streets. This procession of wagons was between him and the car, yet he said that he saw the motorman's hands on the gate, not on the controller or brakes where they should have been, and saw that he was flirting with girls on the sidewalk. Let us take that for what it is worth, and take also his statement that the car was running twelve or fifteen miles an hour and yet that it stopped in one car's length or thirty or thirty-five feet after striking the man. It taxes one's credibility to believe that the motorman who stopped his car going at that high rate of speed within thirty-five feet was giving his attention to girls on the sidewalk and neglecting his duty, yet that, with the statement of this same witness that the motorman did not ring his gong, is all that there is tending to show that the motorman was negligent. But conceding that an inference of negligence could be fairly drawn from that testimony, and leaving for the present the defendant's testimony as to the wagon loaded with boxes out of the case, and conceding that the motorman, if he had been looking over and across the top of the sand wagon, would have seen the plaintiff's husband, where will that evidence lead

us? If the motorman saw the plaintiff's husband walking towards the track, indicating by his course that he aimed to cross it, the motorman could also see that his car was in plain view of the man and had a right to presume that the man would stop and let the car pass. The coming car was a very much more conspicuous object to the man behind the wagon, than he was to the motorman. The sand wagon covered the man behind it up to his shoulders, only his head was above it, but he could see the coming car if he was looking, because that was higher than the wagon.

It makes no difference, therefore, whether we take the evidence of the plaintiff or that of the defendant, that is, whether it was only a sand wagon over the top of which the motorman could see the head of the man, or a wagon loaded with boxes that concealed him entirely from view, if it was a sand wagon and the motorman saw him, the motorman had a right to presume that he was looking and would see the car and would stop; if it was a box wagon the motorman could not see him and he could not see the car; if it was negligence for the motorman not to have anticipated that a man might emerge from behind the wagon it was negligence also for the man not to anticipate that a car might be coming on a track which he knew was there and on which he knew a car was liable to come and of which he saw that his view was for the moment obstructed by the wagon. If there was negligence in the one there was at least equal negligence in the other contributing to the result.

It is negligence for a motorman to run his car at a high rate of speed to a crossing where pedestrians are liable to be when his view of the crossing is so obstructed by a passing wagon that he cannot see whether or not the crossing is clear, but it is also negligence in a full-grown man to approach a railroad track behind a wagon which so obstructs his view that he cannot see whether or not a car that he knows is liable to

be coming is actually coming and enter upon the track without looking or pausing until the obstruction to his view has passed and when the negligence of the two thus combined to cause the accident, the street railroad company is not liable.

As to the alleged failure to stop the car on the first appearance of danger in the shortest time and space possible as the ordinance requires, there was no evidence to sustain the allegation. According to the plaintiff's testimony when the motorman saw her husband, or would have seen him if he had looked, he was behind the sand wagon and in a place of safety, and the motorman had no right to presume that he would shut his eyes and walk into a place of unsafety.

According to defendant's testimony there was a wagon loaded with boxes which prevented the motorman from seeing the plaintiff's husband and prevented him from seeing the car, and "the first appearance of danger" was when the man emerged from behind the car and stepped on the track immediately in front of the car, and there is no evidence that the motorman did not then do everything in his power to prevent the accident.

The instruction in the nature of a demurrer to the evidence should have been given. The judgment is reversed.

All concur.