(October 31, 1921.)

E. F. WALTON, Respondent, v. C. B. CHANNEL, Appellant.

[204 Pac. 661.]

PUBLIC OFFICERS—REFUSAL OR NEGLECT TO PERFORM OFFICIAL DUTIES —SUMMARY REMOVAL.

. 1. C. S., sec. 8684, providing for the removal of an officer "who has refused or neglected to perform the official duties pertaining to his office," is penal in its nature and should be strictly construed. By this is meant that the court will not enter a judgment

Publisher's Note.
1. Removal of public officers for cause, see note in 135 **Am. St.** 250.

of removal unless it is plain that the officer has neglected or refused to perform the official duties which are clearly required of him by law.

2. Where the secretary and treasurer of a highway district prepared certain financial and road reports which were submitted to the board of commissioners and approved by them and thereupon filed and published, there was not such a plain refusal and neglect by the commissioners to perform the official duties required by C. S., secs. 1517 and 1518, as to subject them to removal from office, although the reports did not in all respects comply with the law and were not published until after the date specified in the statute.

3. Under C. S., secs. 1504 and 1545, it is the duty of a board of commissioners of a highway district to consider and allow or reject claims against the district at meetings of the board duly held. The minutes of the meetings of the board must show all claims which were considered and allowed or rejected. Payment of bills cannot be legally made until after the board of commissioners, at a meeting, has considered and allowed the same.

4. The board of commissioners of a highway district cannot consider and allow or reject a bill against the district after it has been paid. Their action in attempting so to do is a nullity.

5. A failure by a board of commissioners of a highway district to consider and allow or reject claims against the district before they are paid is neglect of official duty, for which they may be removed from office.

6. Under C. S., sec. 1504, it was the duty of the board of commissioners to require of the treasurer additional bonds whenever it became certain that the funds in his hands exceeded or would exceed eighty per cent of the amount of the bonds already filed by him

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action for removal of officer for neglect of official duties and for payment of penalty. Judgment for plaintiff. *Affirmed.*

Walters, Hodgin & Bailey and Wolfe & Martin, for Appellant.

Sec. 8684, C. S., is highly penal in its nature and should be strictly construed, and will not be extended to cover acts

and omissions which do not come clearly within its terms. (*Coleman v. Wanamaker,* 27 Ida. 342, 149 Pac. 292; *McRoberts v. Hoar,* 28 Ida. 163, 152 Pac. 1046; *Daugherty v. Nagel,* 28 Ida. 302, 154 Pac. 375; *Corker v. Cowen,* 30 Ida. 213, 164 Pac. 85.)

Removal from office is a crime or public offense. (Sec. 8082, C. S.) In every crime or public offense there must exist union or joint operation of act and intent. (Sec. 8087, C. S.)

If the defendant acted honestly and without intent to defraud the highway district, he will not be removed from office. (*Ponting v. Isaman,* 7 Ida. 581, 65 Pac. 434; *Triplett v. Munter,* 50 Cal. 644; *Smith v. Ling,* 68 Cal. 324, 9 Pac. 171.)

The neglect or refusal mentioned in the statute must be wilful, intentional or corrupt. (*Ponting v. Isaman, supra; Triplett v. Munter, supra; Corker v. Pence,* 12 Ida. 152, 85 Pac. 388; *Coleman v. Wanamaker, supra; Daugherty v. Nagel, supra; McRoberts v. Hoar, supra; Corker v. Cowen, supra.*)

If the defendant honestly sought the advice of his legal adviser, and honestly followed it, he will not be removed from office, although in following such advice he acted wrongfully. (*Ponting v. Isaman, supra.*)

Dampier & Codding, Turner K. Hackman and Homer C. Mills, for Respondent.

Actions under sec. 8684, C. S., while of a penal nature, are not criminal. (*Rankin v. Jauman,* 4 Ida. 53, 36 Pac. 502; *Hays v. Simmons,* 6 Ida. 651, 59 Pac. 182; *Ponting v. Isaman,* 7 Ida. 283, 62 Pac. 680; *Cline v. Superior Court,* 184 Cal. 331, 193 Pac. 929; *In re Burleigh,* 145 Cal. 35, 78 Pac. 242; *People v. Meakim,* 133 N. Y. 214, 30 N. E. 828; *State v. Foster,* 32 Kan. 14, 3 Pac. 534; *Skeen v. Craig,* 31 Utah, 20, 86 Pac. 487; *State ex rel. Smith v. Brown,* 24 Okl. 433, 103 Pac. 762; *Territory v. Sanches,* 14 N. M. 493, 20 Ann. Cas. 109, 94 Pac. 954; *State v.*

*District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103; *State v. District Court,* 53 Mont. 350, 165 Pac. 294; *State v. Borstad,* 27 N. D. 533, Ann. Cas. 1916B, 1014, 147 N. W. 380; *Gay v. District Court,* 41 Nev. 330, 171 Pac. 156, 3 A. L. R. 224; *State v. Medler,* 17 N. M. 644, Ann. Cas. 1915B, 1141, 131 Pac. 976; sec. 1, art. 5, Idaho Const.; *Worthman v. Shane,* 31 Ida. 433, 173 Pac. 750.)

An action penal in its nature is not a criminal action. (Secs. 3161, 3309, 3337, 3462, 1313, C. S.; 18 Am. & Eng. Ency. Law, 268; *St. Louis etc. Ry. Co. v. State,* 56 Ark. 166, 19 S. W. 572; *State v. Indiana etc. Ry. Co.,* 133 Ind. 69, 32 N. E. 817, 18 L. R. A. 502; 30 Cyc. 1329; 6 Words and Phrases, 5268; 2 Words and Phrases, pp. 1330, 1741; *Bailey v. Dean,* 5 Barb. (N. Y.) 297.)

Ignorance of the law will not excuse an officer in a proceeding of this nature, and this is true even though he acts upon the advice of counsel as to what the law is. (*Miller v. Smith,* 7 Ida. 204, 61 Pac. 824; *Robinson v. Huffaker,* 23 Ida. 173, 129 Pac. 334; *State v. District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103; *Rankin v. Jauman, supra.*)

An officer is legally responsible for the errors and omissions of an inferior officer or clerk. (*State v. Reid,* 129 La. 158, Ann. Cas. 1912D, 1081, 55 So. 748; *Attorney General v. Jochiem,* 99 Mich. 358, 41 Am. St. 606, 58 N. W. 611, 23 L. R. A. 699.)

RICE, C. J.—This is one of three actions instituted by respondent under the provisions of C. S., sec. 8684, to remove from office the commissioners of Twin Falls Highway District and recover from each the statutory penalty. The three causes were consolidated for the purpose of trial and appeal, and a separate judgment rendered against each of the commissioners.

C. S., sec. 8684, providing for the removal of an officer "who has refused or neglected to perform the official duties pertaining to his office," is penal in its nature and should

be strictly construed. By this is meant that the court should not enter judgment of removal unless it is plain that the officer has neglected or refused to perform official duties which are clearly required of him by law.

The information in this proceeding states fifty causes of action. They may be grouped under three heads, which will be considered separately.

It is charged that appellant refused and neglected to make, file and publish certain reports for the years 1919, 1920 and 1921 as required by C. S., secs. 1517 and 1518.

C. S., sec. 1517, is as follows: "On or before the first day of February in each year, the highway board will make a report of the condition of the work, construction, maintenance and repair of all the highways within the district; accompanied by a map or maps thereof, together with any other facts necessary for setting forth generally the situation and condition of the highways within such district. Such reports shall be made in triplicate, and one of such reports shall be filed in the office of the highway board, one in the office of the department of public works, and one with the clerk of the board of county commissioners."

C. S., sec. 1518, is as follows: "On or before the first day of February of each year, the highway board shall make and file in its office a full, true and correct statement of the financial condition of such district on the first Monday of the preceding January, giving a statement of the liabilities and assets of the district on such first Monday of January; a copy of such statement shall be published in at least one issue of some newspaper published in the county."

The record discloses that a combined financial and road report, signed by the secretary of the district and bearing the names of the members of the board, was made on February 1, 1919, and March 12, 1920, upon blanks furnished by the state highway engineer, and a financial report published in the "Twin Falls News" on February 6, 1919, and March 13, 1920, respectively; that a separate detailed

financial report was also made on March 12, 1920, and on February 10, 1921, signed by the treasurer of the district, which latter report was published in the "Twin Falls News" on March 8, 1921; that a road report, accompanied by maps, was made on March 19, 1921, signed by the appellant as president of the board and one Taylor as secretary; that maps were not called for in the blank financial and road reports furnished by the state highway engineer, but that on March 19, 1921, road reports with proper. maps were made and filed with the director of the district for the years 1919, 1920 and 1921; that all of the above reports were made in triplicate, one copy being filed in the office of the highway board, one in the office of the department of public works and one with the clerk of the board of county commissioners. It also appears from the record that the board did not originally direct the secretary and treasurer to prepare the reports, but it was assumed that it was his duty to do so; that the reports were submitted to the board and approved by them, and thereupon published and filed as before stated.

While it is true that the preparation, filing and publication of these reports fulfilled an important purpose and are mandatory (*Robinson v. Huffaker,* 23 Ida. 173, 129 Pac. 334), we do not think in this case there was such a plain refusal or neglect on the part of appellant in this regard as to subject him to removal from office therefor.

The information also alleges that it was the official duty pertaining to the office of highway commissioner to consider, allow or disallow all claims filed with the highway board before payment thereof; that appellant has neglected and refused to consider and allow, at a meeting of the board of highway commissioners, certain claims against the district before the same were paid. The various claims referred to are set forth in various causes of action and aggregate approximately $1,053,514.46. A large number of the items were for wages paid to the employees of the district. The manner of making such payment is shown

by the evidence to have been substantially as follows: Time sheets were kept by the different foremen on the work. These time sheets were turned in daily, sworn to by the foremen, and from these sheets the pay-roll was made up showing the names of the men and where and upon what work employed. The pay-roll was then checked and O. K.'d by the director of highways. Warrants were prepared in the highway office and taken to the secretary and president of the board, who signed the same, whereupon they were delivered to the employees. At the next regular meeting of the board, these various pay-rolls were presented to the board and allowed or approved. Material purchased by the board, such as lumber and cement, machinery and other equipment, was shown by the evidence to have been handled substantially as follows: When any such shipment of material arrived, the director of highways, or someone under his charge, checked the items in the shipment and approved them. Warrants were then prepared, signed by the secretary and president, and delivered in payment. Freight charges were paid in the same manner. After having been so paid, such items were presented to the board and approved or allowed.

C. S., sec. 1504, provides that regular meetings of the board of highway commissioners shall be held at least quarterly. This section contains the following provision: "The minutes of all meetings must show what bills are submitted, considered, allowed or rejected. The secretary shall make a list of all bills presented, showing to whom payable, for what service or material, when and where used, amount claimed, allowed or disallowed. Such list shall be signed by the chairman and attested by the secretary."

C. S., sec. 1545, is in part as follows: "The secretary shall countersign all drafts and warrants on the district treasury, and no payment of district funds shall be made except on draft or warrant countersigned by him. He shall not countersign any such draft or warrant until he has found that payment has been legally authorized; that the

money therefor has been duly appropriated and that such appropriation has not been exhausted.

There are no other provisions of the highway district law pertaining to the allowance or rejection of claims against a district, and the payment thereof. Construing the two sections together, one must necessarily conclude that the board of commissioners is the only body authorized to allow claims against the district; that claims must be considered and allowed or rejected at meetings of the board duly held; that the minutes of the meetings of the board must show the claims that were considered and allowed or rejected; that payment could not legally be made until the board of commissioners, at a meeting, had considered and allowed the same. It is true the secretary disregarded the law in countersigning warrants before he found that payment had been legally authorized, but the illegal action of the secretary cannot be regarded as an excuse for the members of the board in refusing or neglecting to do their duty.

The question arises whether the board, by subsequently allowing the claims which had already been paid, acted, in an illegal manner, but acted to such an extent as to prevent their removal for nonfeasance. To hold that the board acted by considering claims and allowing them after they had been paid would be equivalent to destroying the vitality of the statute. What would it avail the district for the board to disallow a claim which had been paid? Moreover, to so hold would involve an essential contradiction in terms, for a bill which has been paid no longer exists as a claim against the district. The so-called action of the board after payment is a nullity, for there is nothing for it to act upon. If an illegal bill has been paid, any action looking toward a recovery by the district of the amount so paid would be a procedure of an entirely different nature from the rejection of the bill.

If under the law it were possible for the director of highways to be clothed with power to examine and approve claims against the district, then the action of the board in

subsequently approving the allowance of the claims would amount to ratification and be equivalent to previous authorization on their part. But the law contains no such provision. Under the law, no officers of the district other than the members of the board are authorized to examine, consider and allow or reject claims.

We must conclude, therefore, that the members of the board neglected to perform their official duties, in that they failed to consider and allow or reject claims against the district before they were paid.

It is suggested that on account of the magnitude of the work, the board used the only feasible method available at the time. From a perusal of the record, we do not find any reason to call in question the honesty of purpose of the members of the board in endeavoring to construct and perfect a system of highways for their district; nevertheless, we must hold that the board of highway commissioners are not a law unto themselves. They have no authority to disregard any portion of the statute to which they owe their official existence, or strip from it any provision in so vital a matter as the expenditure of its funds. In *Robinson v. Huffaker, supra,* it is said: "It is the duty of a public official to obey the law, and he cannot justify his acts upon the ground that he does not believe it will be necessary to obey such law."

C. S., sec. 1504, also contains the following: "The officers of the district shall take and file with the secretary an oath for the faithful performance of the duties of their respective offices. The treasurer shall on his appointment execute and file with the secretary an official bond in such amount as may be fixed by the highway board, which shall not be less than $5,000; and shall thereafter from time to time execute and file such further bonds as may be required of the highway board in amounts fixed by them, which amounts shall be at least sufficient to cover the probable amounts of money coming to his hands and 25 per cent thereof in addition thereto."

Upon assuming the duties of his office, the treasurer executed and filed a bond for $5,000. No additional bond was filed, although the district came into possession of funds greatly exceeding the amount of the bond. Money derived from the sale of district bonds amounting to $1,250,000 was remitted by the purchasers to two of the principal banks at Twin Falls, and subsequently distributed to various banks throughout the district. These banks all executed bonds to guarantee repayment of these funds deposited with them, and the money was withdrawn from these banks only on check signed by the secretary and chairman of the board. After the bonds had been sold and before the proceeds were remitted to the district, the board considered the matter of increasing the treasurer's bond, and upon advice of their attorney to the effect that the provisions of C. S., sec. 1504, relating thereto were directory and not mandatory concluded that the funds were amply protected and that it would not be necessary to require additional bonds of the treasurer. It was shown that additional bonds sufficient to protect the funds of the district would require an expenditure of some $5,000 or $6,000. It should be noted that the plan adopted by the board ignored the provision of sec. 1504 that the treasurer has control of all funds belonging to the district from any source. The law at that time contained no provision requiring depository bonds by the banks with whom the funds of the district were deposited. The only provision contained in the law for the protection of the funds of the district by a bond was that quoted above. The plan adopted by the board did not meet the purpose of the law. The bonds required of the various depositories protected the district against loss from them, but it did not protect the district against possible loss through the action of the treasurer and the chairman of the board.

The provision of the statute quoted above relating to bonds to be given by the treasurer contains at least two requirements. First, that a bond of $5,000 shall be re-

quired of the treasurer upon his appointment; second, additional bonds shall be required from time to time in such amounts as shall be fixed by the board upon its estimate as to the probable amount of money to come into his hands.

The board has discretion in estimating the probable amount which will come into the treasurer's hands. For a corrupt exercise of such discretion, its members would be amenable to the punishment provided in C. S., secs. 8670 and 8681.

But the requirement of additional bonds when it is certain that the funds have exceeded or will exceed 80 per cent of amount of the bond already filed is not discretionary.

In respect to the treasurer's bond, also, appellant neglected to perform the official duty required of him by law.

The judgment is affirmed, with costs to respondent.

Dunn and Lee, JJ., concur.

Budge and McCarthy, JJ., dissent.