(November 3, 1923.)

CLIFFORD L. SHARP, Respondent, v. ROY BROWN, Appellant.

[221 Pac. 139.] ·

PUBLIC OFFICE—STATUTES DEFINING DUTIES OF OFFICER—HOW CONSTRUED—SUMMARY REMOVAL UNDER C. S., SEC. 8684.

1. C. S., sec. 8684, which provides for the removal of an officer "who has refused or neglected to perform official duties pertaining to his office," is penal in its nature, and should be

Points Decided.

strictly construed. A court will not remove an officer under this statute unless it is plain that he has neglected or refused to perform an official duty clearly required of him by law.

2. In order for an officer to be subject to removal under this statute, it is not necessary that the acts complained of be done with an evil or corrupt motive, but it must appear that such officer has purposely and intentionally, in some substantial manner, failed to obey the law which prescribes his official duties.

3. The law does not permit a public officer to substitute his own judgment as to the best means of performing his official duties, if such are contrary to the plain provisions of the statute, although in so doing he may not have an evil or corrupt motive, and no loss may result to the public from such violation of law.

4. In determining whether or not there has been an infraction of duty on the part of a public official, within the purview of this section of the statute, the facts and circumstances must be considered; and where the amount of public funds available for deposit as required by ch. 256, Laws 1921, p. 557, known as the "Public Depository Law," is so small that no banking institution will give a bond for such deposit, or pay interest on the daily balances, the official having custody of such public funds cannot be held for such refusal.

5. Among other things, the purpose of C. S., sec. 1504, is to require the commissioners of a highway district, upon taking the oath of office, to proceed with reasonable diligence to organize and carry out the object for which the district was created. But where no funds come into their hands until long after the first meeting of the board, the failure to appoint a treasurer at this meeting is not such a violation of the statute as to warrant the removal of the commissioners from office and the infliction of the penalty prescribed by C. S., sec. 8684.

6. Statutes define the duties of public officers in general terms, and must always be construed with regard to the ever-changing conditions in human affairs, which may not have been fully anticipated or provided for in such statutes. A public officer should not be removed from office under C. S., sec. 8684, unless he has refused or neglected to perform an official duty pertaining thereto

Publisher's Note.

2. Intentional disregard of law without corrupt intent as ground for removal of public official, see note in 31 **L. R. A.**, **N. S.**, 566.

6. Good faith or intent of officer in committing wrongful act as affecting right of removal, see note in **Ann. Cas.** 1913B, 400.

Removal of public officer for cause, 135 **Am. St.** 250.

in some substantial respect, which under the existing conditions would lead all reasonable minds to conclude that the act complained of was an intentional violation of law. A reasonable effort to perform the duties pertaining to public office is all the law requires.

APPEAL from the District Court of the Ninth Judicial District, for Jefferson County. Hon. James G. Gwinn, Judge.

Action to oust defendant from the office of highway commissioner, and for the statutory penalty. From judgment for plaintiff, defendant appeals. *Reversed* and *remanded,* with instructions to dismiss.

Peterson & Coffin and R. W. Katerndahl, for Appellants.

"The proceedings provided for under C. S., sec. 8684, are clearly restricted to cases where an officer is guilty of knowingly, wilfully, and corruptly charging and collecting illegal fees for services rendered or to be rendered in his office, or of knowingly, wilfully or corruptly refusing or neglecting to perform the official duties pertaining to his office." (*Daugherty v. Nagel,* 28 Ida. 302, 154 Pac. 375.)

F. A. McCall and C. A. Bandel, for Respondent.

The status of appellant's official delinquencies was fixed and complete at the time of the placing of the district's funds in the Bank of Roberts, on August 31, 1921, and that status could not be changed by the subsequent acts of said appellant or of any other persons. (16 C. J. 92 (sec. 61); *McCoy v. State,* 15 Ga. 205; *State v. Fowler,* 13 Ida. 317, 89 Pac. 757.)

It being established by competent and uncontradicted evidence that appellant had a clear conception of the provisions of the statutes which he violated, it must follow that he had knowledge that the facts existed which bring his official omissions within the provisions of the law and that they were therefore made "knowingly"; and having placed the district's funds in the bank without first re-

quiring such bank to give a bond, or even attempting to do so, and having failed and neglected to fix a uniform rate of interest or to collect any interest, or to appoint a treasurer as by law required, or to make any *bona fide* attempt to perform any of these official duties, until long after the offenses were complete, it necessarily follows that such omissions were "wilful" and that the trial court did not err in so finding. (C. S., sec. 8074; *Archbold v. Huntington,* 34 Ida. 558, 201 Pac. 1041.)

The provisions of the statutes which appellant admits he violated, being clear, explicit and mandatory, and the appellant not being wrongly advised or in any way misled, and the evidence clearly establishing his complete understanding thereof, he cannot justify his failure to perform the official duties prescribed by such statutes upon the grounds of good faith and honest intention. (22 R. C. L. 570; *Miller v. Smith,* 7 Ida. 204, 213, 61 Pac. 824; *State v. District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103; *Skeen v. Craig,* 31 Utah, 20, 86 Pac. 487; *Walton v. Channel,* 34 Ida. 533, 204 Pac. 661; *Robinson v. Huffaker,* 23 Ida. 173, 129 Pac. 334.)

WILLIAM A. LEE, J.—This is one of three summary actions commenced by respondent under C. S., sec. 8684, to remove from office appellants, who are commissioners of the Camas-Monteview Highway District, in Jefferson county, and to recover the statutory penalty. The actions were consolidated for the purposes of trial, and a separate judgment was rendered against each commissioner, from which they severally appeal. By agreement, the testimony taken in the cause as above entitled is deemed to apply to all of the defendants, and judgment in the other cases shall abide the decision on this appeal.

The information charges appellant, as one of the commissioners of this highway district, with having wilfully, knowingly and intentionally failed, neglected and refused to perform an official duty pertaining to his office, in that: (1) he did not require the Bank of Roberts, a banking

corporation, or the First National Bank of Roberts, with which it was subsequently consolidated, to deposit securities or give bond for the safekeeping of the funds of said highway district, as required by ch. 256, Laws 1921, p. 557, these banks being at the time depositories of public funds of this highway district, and as such receiving and holding, so it is alleged, large sums of money belonging to said district; (2) appellant, while acting with the other members of the board of commissioners, wilfully, knowingly and intentionally failed, neglected and refused to fix a uniform rate, or any rate, of interest to be paid by its depositories, the Bank of Roberts and the First National Bank of Roberts, on the sums of money deposited in said depositories by the highway district; (3) appellant, acting with the other commissioners, wilfully, knowingly and intentionally failed, neglected and refused, at the first meeting of said board of commissioners, to appoint or to assist in appointing a treasurer for said highway district, or to require any person or corporation to give bond or deposit any securities for the safekeeping of the funds belonging to this district to be handled by said treasurer.

A trial was had to the court, which resulted in a judgment removing appellant from office, and that the informant should recover $500, as provided by the statute. From this judgment this appeal is taken.

The specifications relate only to the alleged error of the court in finding that the board of highway commissioners wilfully, knowingly and intentionally failed, neglected and refused to obtain a depository bond from the banks in which they deposited the funds of the district, to fix a rate of interest to be paid on such deposits, or to appoint a treasurer at the first meeting.

C. S., 8684, which provides for the removal of an officer "who has refused or neglected to perform the official duties pertaining to his office," is penal in its nature, and should be strictly construed. By this is meant that the court should not enter judgment of removal unless it is plain that the officer has neglected or refused to perform official duties

which are clearly required of him by law.    (*Walton v. Channel*, 34 Ida. 533, 204 Pac. 661.)

It appears that this highway district came into existence in April, 1921, the organization meeting being held on the 28th of that month. At that meeting the commissioners, after due discussion, adopted a resolution making the Bank of Roberts the depository for the district, on condition that a satisfactory agreement could be made with this bank. The commissioners all testify, and in this they are corroborated by the witness J. C. Stoneburner, secretary of the district, and W. A. Davis, the cashier of the bank, that the directors of the bank declined to go to the trouble or expense of giving an indemnity bond or surety of any kind, for the reason that the account was a very small one, rarely if ever exceeding $1,000, and during most of the time being only a few dollars, which was subject to check. An inspection of the state of this account, as disclosed by the balance sheets of the two depository banks, shows that the first deposit was not made until August 31st following the organization of the district, on which day a little more than $2,000 was deposited in the Bank of Roberts, and on the same day checked down to about $800. Occasionally thereafter small deposits would be made to this account, but the checks drawn against it were frequent, and in such amounts as to keep it down to a nominal sum practically all of the time, with the exception of a few days after a deposit had been made, and until the checks drawn against the account were received by the bank. At about the time of the commencement of these proceedings, the district had a balance of $2.95.

From an inspection of the balance sheets it is apparent why any banking institution would not consider the account of sufficient value to warrant it in either giving an indemnity bond for its protection or paying interest on the daily balances.

It appears that the district, when created, contemplated a bond issue of approximately $50,000, to meet corresponding amounts to be furnished by the state and government in certain projected road building. But the proposal to issue

bonds was rejected by a vote of the district, with the result that no funds that could be of any consequence in the matter of road building appear to have come into the hands of the commissioners during the period in office covered by the charges in the information. It is clear, however, that these commissioners made repeated efforts, first with the Bank of Roberts and, after its consolidation, with the First National Bank of Roberts, to obtain a bond or security for the small amount deposited. Following their efforts with these two banks, they took the matter up with the First National Bank of Rigby, and their attorney, who was at that time in charge of the matter, testified that the officers of the First National Bank of Rigby and also of the First National Bank of Dubois stated that the amount deposited by the district was so small that it would not pay them to furnish a bond.

It appears that these commissioners were somewhat persistent in their efforts to secure some bank in that locality that would act as the district's depository and furnish indemnity and pay interest on the district's balances. It is equally clear that after the bond election failed, and it was apparent that the district would not have sufficient funds with which to carry on its operations, but only such small amounts as might be received from time to time as the district's proportion of money obtained from the collection of taxes, the district would in effect, for practical purposes, cease to function as a going concern, and that the amount of funds in its hands at any one time would be so small that the account would be an undesirable one with any banking institution.

This provision of the statute, like all others, must be construed with regard to the purpose for which it was enacted. It is a summary proceeding, which deprives the official informed against of the right to a jury trial. Under the repeated holdings of this and other courts, it is not required that the officer informed against shall be guilty of refusing or neglecting to perform an official duty in the sense of having an evil or corrupt motive in so doing, but it implies a conscious wrong, as distinguished from an act maliciously or

corruptly done. It certainly cannot be held that under this statute the legislature contemplated the infliction of so severe a penalty as the statute calls for where the commissioners, after making a diligent effort to secure a depository, were unable to do so because of the comparatively trifling amount of funds at their disposal, or because they could not find a bank that would accept business which such depository could not make profitable, or because such bank would not at the same time pay interest on daily balances and give an indemnity bond to secure undesirable and unprofitable business. The law does not contemplate visiting upon public officials the severe penalty prescribed by this statute for a failure of this kind, and such failure does not fall within the purview of the statute.

Ch. 256, Laws 1921, p. 557, was in force during all of the time after this district had any funds to deposit. Sec. 24 of that act seems to contemplate that it is impracticable, if not impossible, to follow the provisions of the depository law where the amount of funds for deposit is small, and this section arbitrarily fixes $1,000 as the amount a depositing unit, such as this district, must have in order to come within the provisions of this act. Said sec. 24 of the depository law among other things provides that except where the funds of a depositing unit are less than $1,000, they shall be kept on deposit subject to the provisions of the law in designated depositories, but makes it lawful for the treasurer of a depositing unit having less than $1,000, with the approval of the supervising board, to make a special deposit with any bank or depository that will accept the funds under such conditions, and which will charge the least amount for the service of keeping the funds on special deposit. The legislature in enacting this proviso which excepts small deposits of this character from the general provisions of the act, does so recognizing the inability of taxing units to find any banking institution that will accept small accounts of $1,000 or less under the general provisions of the public depository law.

Nor do we think that the failure to appoint a treasurer at the first meeting of the board constitutes such failure, neglect or refusal to perform one of the duties of the office as to merit the infliction of the severe penalty of the statute. C. S., sec. 1504, contemplates that the members of the board of highway commissioners shall, upon taking the oath of office, complete their organization by the appointment of a treasurer and secretary, who may be of their number, and who hold office at the pleasure of the board. This section of the statute also provides that upon the resignation or, removal of the president, secretary or treasurer, such vacancies shall be filled. However, this section must also be given a reasonable construction. The purpose of the legislature was to require the commissioners, upon taking the oath of office, to proceed with reasonable diligence to carry out the objects for which they were appointed to office, and to point out the general mode of procedure. Where, as in the instant case, the commissioners came into office in April, but received no funds whatever with which to begin their work as officials until the last day of August in the summer following, and where it is evident from the entire record that the purpose of the creation of the district was to have an organization ready to proceed with public improvements in the way of road-building after funds were provided from the proposed bond issue, which never in fact was authorized, and where only comparatively trifling amounts of money came into the control of the commissioners, the purpose of the creation of the district having failed, it would be applying the rigors of the law with unwarranted severity to hold that the commissioners should be removed under the existing conditions, and should be penalized in the sum of $500, for a failure to formally name themselves or some other person or persons secretary and treasurer at the first meeting of the board, where no purpose whatever was to be served by such action, and no possible harm could befall the district or the public interest by a failure to do so. A secretary, in the person of a Mr. Stoneburner, was immediately secured, and he, together with appellant, who had been selected as presi-

dent, were thereafter active and diligent in looking after the welfare of the district, and evidently contemplated that the bond issue would carry and that it would have funds with which to function. Somewhat later, a member of the board was selected as treasurer.

A careful examination of the record fails to disclose that any one of these three commissioners wilfully, knowingly and intentionally failed, neglected or refused to perform his official duties as commissioner, in the sense contemplated by the statute. As said in the concurring opinion in *Walton v. Channel, supra:*

"Not every infraction or departure from the strict letter of the law will subject an officer to removal under this statute, for the law does not concern itself with trifles, nor does it require a degree of efficiency or exactness in the performance of official duties that cannot be reasonably complied with in the exercise of ordinary care and diligence."

Since the bringing of this action the legislature (ch. 97, Laws 1923, p. 121) has amended C. S., sec. 8684, by adding the words "*knowingly, wilfully and corruptly or in bad faith,* refused or neglected to perform the official duties pertaining to his office, etc.,*" and provided that the penalty of $500 shall be paid into the school fund, so that the informer may now recover only his costs. Without commenting upon the wisdom of this change in a statute that has been in force without change in this state for more than thirty-five years, and remains the law in California after having been in force more than fifty years, we are constrained to say that if the construction and application contended for by respondent in this case was to be given to the law, its harshness would be so oppressive that a modification would be inevitable.

However, in following the construction that has been given to it in a large number of cases in this and adjoining states, particularly in the more recent cases of *Archbold v. Huntington,* 34 Ida. 558, 201 Pac. 1041, and *Walton v. Channel, supra,* upon which cases respondent appears to rely, we think the application of this law to a given state of facts will only result in a removal from office and the imposition of the pen-

alty prescribed by the statute where one of two conditions arises: First, an officer has been guilty of charging or collecting illegal fees; second, he has neglected, refused or failed to perform an official duty pertaining to his office in some substantial manner, to such an extent and in such a way that the duties of his office as prescribed by law have been purposely and intentionally ignored, and the officer has substituted his own method of performing such official duties for that which the legislature has prescribed. This, plainly, the law will not permit, even though no corrupt motive existed and no loss resulted to the public from his violation of the law. Its purpose is to compel persons who accept public office to perform the duties pertaining thereto as nearly as may be in the manner prescribed by law. But courts, in determining whether or not there has been any infraction of this duty, must necessarily consider the facts and circumstances pertaining to each particular case, and where, as in the instant case, officials have been unable to keep funds belonging to taxing units in a public depository by reason of the amount being so small that the account is of no value to a business institution, and it refuses to either pay interest upon the daily balances or to furnish an indemnity bond, it presents a situation which the officials cannot control, and they cannot be penalized for the refusal of the banking institution to accept public funds upon terms as favorable as the law requires. Clearly the enactment of the public depository law cannot compel private banking concerns to accept deposits upon the terms it imposes, and when they decline to do so, public officials cannot for this reason alone be removed from office and penalized under this statute.

The cause is reversed and remanded, with directions to vacate the judgment of the court below and dismiss the proceedings. Costs awarded to appellant.

Budge, C. J., and McCarthy, Dunn and Wm. E. Lee, JJ., concur.