STATE OF MISSOURI at the relation and to the use of THE CITY OF ST. LOUIS, a Municipal Corporation, Relator, v. H. SAM PRIEST, Clerk of the Circuit Court for the Eighth Judicial Circuit of the State of Missouri, and FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation.—152 S. W. (2d) 109.

Division One, June 12, 1941.

38

*E. H. Wayman* for City of St. Louis.

*Igoe, Carroll, Keefe & McAfee* for H. Sam Priest.

*Thomas Bond* for Fidelity & Deposit Company of Maryland.

HAYS, J.—Action by the State at the relation of the City of St. Louis on the official bond of the Clerk of the Circuit Court for the Eighth Judicial Circuit. The clerk and his surety are defend- ants. A verdict for the defendants was directed. The relator took an involuntary nonsuit, moved ineffectually to set it aside and appealed to this court. The record facts are these:

Early in 1927 there was pending in the St. Louis Circuit Court a condemnation proceeding against certain landowners whose

property was desired by the city for a new plaza. As provided by law, the city sought and obtained an assessment of special benefits against lands in the improvement area not taken or damaged in the making of the plaza. Judgment for these benefit assessments was rendered March 7, 1927. Under Sections 1038 and 1278, R. S. Mo. 1939, the power of the city to cause executions to be issued on this judgment would automatically expire ten years after its rendition, that is, upon March 7, 1937, unless the judgment had been revived by *scire facias* or kept alive by part payment. The judgment provided that special executions might be issued against the various tracts of land involved upon motions filed therefor by the city and after a showing had been made that funds to pay condemnation damages had been appropriated. The city took no steps whatever toward enforcing its judgment until March 2, 1937. As March 7, 1937, fell on Sunday, this left only four days of the life of the judgment during which the necessary procedure for issuing the executions could be taken. On March 2nd the city filed motions in the division of the circuit court which had rendered the original judgment, requesting special executions against forty-six separate tracts of land. These motions were accompanied by a certified copy of an ordinance appropriating money for the payment of the condemnation damages. On March 5th similar motions were filed for twenty-one more special executions. These were also filed in the division in which the original judgment had been rendered. All of the motions were sustained. At each time, and before leaving the divisional court room, counsel for the city wrote out and handed to the deputy clerk in that division a memorandum of the minute entry to be made in the record of the court showing the action of the judge in sustaining the motions.

The office of the circuit clerk is situated upon another floor of the court house from that on which is found the court room in which these proceedings were had. In that office the clerk kept, as he was required to do, an order book in which *praecipes* for processes of various kinds, including executions, are entered. Counsel for the city did not enter an order in this book on March 2nd, the day on which his first motions were sustained, nor did he, in leaving the court house, even go to the clerk's office. He did not at that time orally or in writing instruct the clerk or any of his deputies to issue the desired executions. On March 3rd, the day following the action of the court on the first forty-six motions, counsel wrote a letter to the clerk requesting that executions be issued in these forty-six instances. Likewise on March 5th counsel made no entry in the order book asking for the twenty-one additional executions adjudged on that day, but again contented himself with writing a letter, received by the clerk on the following day, requesting their issuance. Neither of these letters was introduced in evidence and it is not contended that in either of them counsel stated that the Statute of Limitations was

about to run on his judgment nor that any other special emergency or reason for unusual haste existed.

None of the executions were issued on or before the 6th of March. Shortly thereafter they were prepared. The attorney for the city did not call at the clerk's office to get these executions, but they were delivered by the clerk directly to the sheriff. The first issued were originally made returnable to the April Term. However, it appeared that they could not be served and sales had thereunder in time for return at that term and, at the request of the city's attorney, they were amended and made returnable to the June Term. The rest of the executions were originally made returnable to the June Term. All were placed in the hands of the sheriff in sufficient time for him to levy them, have sales thereunder and make returns at such term.

The execution defendants filed motions to quash on the ground that the process was not issued until the life of the judgment had expired. These were sustained.

In passing on the propriety of the action of the trial court in directing a verdict for the defendants, we have in mind the well-established rule that the court must consider as true all of the evidence favorable to the plaintiff, disregarding that evidence which is favorable to the defendants where any conflict exists. [State ex rel. Sirkin Company v. Hostetter, 340 Mo. 211, 101 S. W. (2d) 50; Becker v. Aschen, 344 Mo. 1107, 131 S. W. (2d) 533.] We must also draw from the evidence all reasonable inferences of fact favorable to the plaintiff. [6 Encyc. of Pleading and Practice, 442.]

The breach of defendant clerk's bond, here assigned, is allegedly negligent failure to issue these executions on or before March 6th. The clerk of a circuit court is an administrative officer, whose functions are largely ministerial in character. Where the law specifically enjoins upon him the performance of certain actions which he negligently performs, he is liable on his bond to the person injured by his negligence. [Mechem, Public Officers, sec. 667.] But. negligence on the part of an officer consists only in a failure to use that degree of care which an ordinary reasonable and prudent man would exercise under the same or similar circumstances and conditions. A reasonable effort to perform the duties pertaining to such office is all the law requires. [Sharp v. Brown (Idaho), 221 Pac. 139.] The law presumes the reasonable performance of official duty and the burden is upon the person claiming neglect to show that the conduct of the officer has actually been negligent. [Mechem, Public Officers, sec. 677.] Moreover, as stated by Mechem, supra, sec. 680: "It is equally true that if the result complained of would have followed, notwithstanding their (the officers') misconduct, or if the injured party himself contributed to the result in any degree by his own fault or neglect, they cannot be held responsible. If the position of the injured party would have been just the same had not the alleged

misconduct occurred, he has no legal ground of complaint; and if his own conduct or the conduct of his attorney contributed to the result, he is *in pari delicto,* and the law leaves him where it finds him.'' In this connection it is well to remember that in a case founded upon the alleged negligence of the defendant, if the evidence of the plaintiff himself shows contributory negligence, a verdict should be directed. [Hafner v. St. Louis Transit Co., 197 Mo. 196, l. c. 201, 202, 94 S. W. 291; Bruce v. United Railways Co., 181 Mo. App. 93, 163 S. W. 548.] Due diligence on the part of the clerk, of course, requires that he perform such acts as he is required to perform by law with reasonable celerity and within a reasonable time. [Randol v. Garoutte, 78 Mo. App. 609; 22 R. C. L. 461.]

We are called upon to determine from the record whether or not the defendant clerk was under any duty to issue these executions on or prior to March 6th. If he were not under such duty under the facts of this case his delay until after the sixth cannot be characterized as negligent. We are also called upon to determine whether or not the relator, through its attorney, was guilty of fault or negligence, contributing to the injury which it claims to have received.

█ The statutes of this State make it the duty of the clerk to issue an execution upon a judgment when requested so to do by the judgment holder. [Secs. 1322 and 13295, R. S. Mo. 1939.] Executions are not issued by the court although they are based upon a judgment rendered by the court. It is a matter of general knowledge among the profession that a judgment ordinarily concludes ''And that the plaintiff (or defendant) have execution hereof.'' This or equivalent language in a judgment, however, does not authorize the clerk to issue the execution until its issuance has been requested by the successful litigant. It merely creates in the litigant a power to cause the clerk to issue the execution. [8 Encyc. of Pleading and Practice, 380; State v. Pilsbury, 35 La. Ann. 408; 1 Freeman on Executions (3 Ed.), sec. 23.] In the present case the original judgment had not provided for the immediate issuance of an execution. More accurately stated, it had not created a power in the plaintiff to immediately cause the clerk to issue the execution. It had provided that the plaintiff might have execution upon making a showing to the court that it had done certain things with respect to paying condemnation damages. When the plaintiff, upon motions, made such showing the court's order in sustaining the motions was not to be construed as a direction to the clerk to issue the executions, but was merely tantamount to incorporating in the judgment the usual language ''and that the plaintiff have executions hereof.'' In other words the action of the court in sustaining these motions placed it within the power of the relator to have executions issued by the clerk when it should request such action.

█ After the request for the issuance of the executions was

made to the clerk by letter, it was of course his duty to proceed to issue the same with reasonable celerity. [Randol v. Garoutte, supra.] Ordinarily, it would seem that all he would be required to do would be to issue the executions in time for them to be served by the return day therein named. [Cf. State, to the use of McMahan & Huston v. Rollins, 13 Mo. 179.]

But it is contended by relator that the peculiar circumstances of this case required speedier action on behalf of the clerk. In this connection the full situation should be considered. The clerk was asked to prepare some sixty-seven special executions. The mere physical work of filling in the printed forms, comparing property descriptions with those contained in the judgment, calculating the interest due and entering the amount of the debt and costs on the back of the executions, together with the making of record entries in the execution docket would require many hours of labor. There is evidence that the mere mechanical filling in of the printed forms took a competent stenographer eleven hours. But it must be remembered that the clerk had much more to do than simply filling in these forms.

In this connection it is also to be remembered that the clerk and his deputies had other work to do besides the issuance of these executions. We take notice of what every judge and lawyer well knows that cases are constantly being filed in which the clerk must issue process. He is required to issue subpoenas in cases set for trial. He must record in the permanent records of the court its proceedings. He makes transcripts on change of venue and appeal and he keeps complicated books of account in which he enters the financial transactions occurring in his office. All of this requires adherence to a reasonable office routine. In the absence of any actual or constructive knowledge of an emergency requiring the immediate issuance of these executions, the delay shown in this case is far from unreasonable and could not constitute negligence. The record clearly shows that neither the clerk nor his deputies had any actual knowledge of the circumstances amounting to an emergency now relied on by the relator.

Relator seeks to charge the clerk with constructive knowledge of such facts. Everyone, it is said, is presumed to know the law. Hence the clerk must have known of the ten-year Statute of Limitations. For the purpose of the argument it may be assumed that the clerk did know that the statutory life of a judgment is ten years. Can he be presumed to know the date on which this judgment was rendered? It is true that he had custody of the judgment roll of the court, but the records of every circuit clerk contain thousands of judgments. No clerk could be called upon to remember the date of each judgment rendered. It is equally unreasonable to expect that whenever a *praecipe* for execution is filed, the clerk will hasten to his abstract of judgments to determine whether or not that par-

ticular judgment is in danger of being outlawed. Moreover, should he consult the record he could not know whether or not the life of the judgment had béen extended by part payment. [Sec. 1038, R. S. Mo. 1939.]

Viewed in this light it is clear that the relator's evidence, considered in the light most favorable to it, wholly fails to show any negligence on behalf of the clerk. Furthermore, the said evidence clearly demonstrates the existence of contributory negligence and fault on the part of the city. Its attorney had actual knowledge of the date of the judgment and the running of the statute. Yet he waited until a few days before the judgment's life was to expire before attempting to enforce it. Moreover, when he did order executions he failed to apprise the clerk of the existence of an emergency or the need for unusual haste. Such action on the part of the city clearly contributed to the result of which it now complains.

It follows that the trial court correctly directed a verdict for the defendants and the judgment below must be affirmed. It is so ordered. All concur.