**STATE of Missouri, Respondent,**

v.

**Christina KROUT, Appellant.**

No. 44417.

Supreme Court of Missouri.

Division No. 2.

Oct. 10, 1955.

Morris A. Shenker, William R. O'Toole, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Christina Krout appeals from a judgment imposing a fine of $750 and imprisonment in the city jail for a term of three months for selling intoxicating liquor without having a license to do so, a felony. Section 311.550(7). (Statutory references are to RSMo 1949 and V.A.M.S.) Appellant contends error was committed in the introduction of a certain exhibit in evidence and in the several forms of verdict submitted to the jury.

William Mack Brown, an agent of the Missouri State Department of Liquor Control, Detective Corporal Philip Dwyer and two or three police officers of the city of St. Louis went to within about a half block of 5118 Kensington avenue, St. Louis, Missouri, on the morning of July 11, 1953, about 2:15 a. m. Agent Brown proceeded to 5118 Kensington and rang the doorbell. Appellant answered the door and he asked her if she had anything to drink. She admitted him and they walked back to the kitchen where several persons, men and women, were drinking beer. Brown told appellant he wanted some whiskey. She went to a pantry and brought out a bottle of whiskey with a "Westridge" label on it. He then asked appellant if she wanted a drink and she said yes. Appellant poured the drinks from the bottle into two three-quarter ounce "shot" glasses. Appellant told him he owed a dollar. He gave her a dollar and she put it in her pocket. Appellant put the drinks on a table and returned the bottle to the pantry. About this time the doorbell rang and appellant went to answer it. She left her drink on the table, without drinking any of it. Brown drank his liquor. He went to the front of the house. Corporal Dwyer was there and talked to Brown. Dwyer placed appellant under arrest. The other officers came in. Agent Brown was back in the kitchen within three minutes. The shot glasses were in the same places on the table they had been when he went to the front of the house. Corporal Dwyer picked up a Coca-Cola bottle from the floor and poured the liquid out of the shot glass appellant had left on the table into the Coca-Cola bottle. Asked "how must whiskey was in that shot glass," he answered: "It was full." He stated the Coca-Cola bottle might have had some drops of liquid in it. He asked appellant to take the money out of her pocket and place it on the table. She did this. Earlier in the evening Brown had written the serial numbers on a piece of paper of three one dollar bills he had in his pocket. Corporal Dwyer examined the money and the serial number of one of the dollar bills on the table corresponded with a number on the paper. He then questioned appellant about selling liquor to agent Brown, and appellant stated she had and that she had no license to sell intoxicating liquor of any kind. Corporal Dwyer and Officer Schriefer went to the pantry, and while the two were standing side by side Schriefer took the bottle of liquor off of a shelf in the pantry, and handed it to

Dwyer. Brown testified he saw the officers get the bottle from where appellant put it. This was the bottle with the Westridge label on it. Corporal Dwyer and agent Brown placed their initials on the label. Officer Dwyer also marked the label of the Coca-Cola bottle with his initials. He took possession of both bottles, took them to the district office and tagged them, and kept them under his custody until he delivered them in person to Clemons R. Maise, the director of the police laboratory.

The bottle with the Westridge label was introduced in evidence as State's Exhibit 3 and the Coca-Cola bottle was introduced as State's Exhibit 4. Mr. Maise testified that Corporal Dwyer delivered the two exhibits to him in person on July 14, 1953; that Exhibit 4 had a crown cap on it, covered with a masking tape; and that his chemical analysis for the alcoholic content of the liquid in Exhibit 3 showed 52.6% by volume, or 44.9% by weight, and the liquid in Exhibit 4 showed 46% by volume, or 38.8% by weight, and that in each instance the liquid was intoxicating liquor.

Appellant contends error was committed in the introduction of Exhibit 4 because the chemical analysis of Mr. Maise established "that there was a difference of 6.4% by volume between State's Exhibits 3 and 4, and a difference of 6.1% by weight between State's Exhibits 3 and 4."

"Intoxicating liquor" is defined as alcohol for beverage purposes "containing in excess of three and two-tenths per cent of alcohol by weight." § 311.020. It is unlawful for any person to sell such intoxicating liquor in this State in any quantity without taking out a license therefor. § 311.050. The chemical analysis established that the alcoholic content of the liquid in Exhibit 3 was 44.9% and in Exhibit 4 was 38.8% by weight. In each instance the liquid was intoxicating liquor. The evidence warranted findings that Corporal Dwyer picked the Coca-Cola bottle off of the floor and when he poured the liquor from the shot glass in it, the bottle was not completely empty but had a few drops of liquid in it. He then placed a cap

on the bottle and marked it with his initials, and had the exhibit, together with Exhibit 3, in his custody until he personally delivered them to Mr. Maise. Mr. Maise explained that the liquor from the shot glass would be diluted if Exhibit 4 had some liquid in it when Corporal Dwyer emptied the shot glass into it. In State v. Myers, 351 Mo. 332, 172 S.W.2d 946, 950, stressed by defendant, there was no evidence as to when, where, or from whom the chemist received the exhibit, and the changed condition of the exhibit was not accounted for. State v. Long, 336 Mo. 630, 80 S.W.2d 154, 161 [10] and State v. Leonard, Mo., 182 S.W.2d 548, 551 [9, 10], as appellant states, were reversed on other grounds than here urged. The evidence accounts for the custody of Exhibits 3 and 4 from the time they were taken into possession by the officers and the dilution of the alcoholic content of the liquid in Exhibit 4 is reasonably explained to have resulted from pouring the contents of the shot glass into a Coca-Cola bottle with some liquid in it. State v. Marshall, 317 Mo. 413, 297 S.W. 63, 67 [9, 10]. There was no affirmative showing that either exhibit had been tampered with. The presumption is that public officers discharge their official duties fairly, impartially and in good faith. State ex rel. and to Use of City of St. Louis v. Priest, 348 Mo. 37, 152 S.W.2d 109, 112 [5]; Neidert v. Terrill, Mo.App., 215 S.W.2d 745, 749 [1]; Stocker v. City of Richmond Heights, 235 Mo.App. 277, 132 S.W.2d 1116, 1118 [8]; United States v. One Cadillac Automobile, D.C., 292 F. 773, 775; United States v. Gaitan, D.C., 4 F.2d 848.

Section 311.550(7) provides that any person selling intoxicating liquor in this State without first having procured a license therefor shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the penitentiary for from two to five years, or imprisonment in the county jail for from three months to one year, or by a fine from $100 to $1,000, or by both such fine and imprisonment.

Appellant says that the court erred in giving the jury five verdict forms, "four

of which required a verdict of guilty," for the reason the four guilty verdict forms were "cumulative, unnecessary and served to impair the jury's exercise of a free discretion as to the verdict which should be returned by them to the prejudice of the defendant."

The first form of verdict read: "We, the jury in the above entitled cause, find the defendant guilty of feloniously selling intoxicating liquor without a State liquor license, as charged in the indictment, and assess her punishment at imprisonment in the Missouri State penitentiary for a term of ———— years." The other three forms of verdict of guilty were different only in that following the word "at" they had blank space for assessing the punishment at a fine, or imprisonment in the city jail, or a fine and imprisonment in the city jail.

The other form of verdict was for use in the event appellant be found not guilty.

■ We have said it is not necessarily incumbent upon the court to furnish forms of verdict. State v. Hannon, Mo., 204 S.W.2d 915, 919 [22]. This is likely based upon the assumption that a jury is capable of formulating its conclusion in a proper form of verdict. In State v. Randolph, Mo., 39 S.W.2d 769, 773 [4], the forms of verdict given the jury were considered to place emphasis upon punishment by imprisonment in the penitentiary, and were criticised but were not held reversible error. In State v. Davis, 342 Mo. 594, 116 S.W.2d 110, 113, the accused, upon conviction, was subject to a penitentiary sentence, or imprisonment in the county jail, or a fine, or a fine and imprisonment in the county jail. Two of the submitted forms of verdict used the conjunction "and," omitting reference to punishment by imprisonment "or" a fine. Other instructions correctly stated the permissible punishments. The jury assessed a penitentiary sentence and the court considered that the jury was not misled. The instant forms of verdict are not subject to the stated criticisms of the Randolph and Davis cases.

■ Instruction No. 1 in the instant case, as stated by appellant, clearly sets out the several authorized punishments and the average jury would understand one of the authorized punishments should be assessed if the accused be found guilty. The instruction also informed the jury that unless they found the facts to be as submitted therein, the accused should be acquitted. We think an intelligent jury would understand that the different forms of verdict were merely for their convenience; and if the verdict be not guilty, then that form might be used, or if the verdict be guilty, then the form fitting the punishment arrived at might be used. Reading the instructions as a whole it is difficult to conclude that the four forms of verdict of guilty "required" a verdict of guilty or impaired the jury's exercise of a free discretion in arriving at its verdict. The point is not well taken. 23 C.J.S., Criminal Law, § 1293, p. 872.

We have examined the information, verdict, judgment and other matters to be reviewed and find no reversible error therein.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.