THE STATE v. TOM DAVIS, Appellant.—116 S. W. (2d) 110.

Division Two, May 3, 1938.

*C. A. Powell* for appellant.

*Roy McKittrick*, Attorney General, and *Russell C. Stone*, Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted of felonious assault without malice aforethought committed upon one C. D. Adams by cutting him with a knife, in violation of Section 4015, Revised Statutes 1929 (Mo. Stat. Ann., p. 2821). The punishment assessed by the jury was two years' imprisonment in the penitentiary. His brief on this appeal complains the verdict was not supported by substantial evidence, and of three instructions given by the court.

A brief recital of the facts will show that the evidence was amply sufficient to support the verdict, and that appellant's assignment charging the contrary is without merit. The prosecuting witness, Adams, conducted a general store at Powe in Stoddard County. The appellant and another man, Richard Lee, had been drinking the day of the assault, February 2, 1936, and had been in the store several times. Adams testified appellant was "pretty full." He bumped against a slot machine and tipped it against the wall. Adams asked both men to leave the store and sober up. Lee got his arm around appellant, and both went out. As they did appellant cursed Adams and invited him out on the porch.

The two men remained outside fifteen or twenty minutes, apparently plotting as Adams watched them through the window. Appellant was stroking his knife against the side of the privy. Another witness heard the appellant say "I am going in and get that". G-d-s-b. Presently appellant and Lee returned. Adams met them at the door, tried to hold it closed, and forbid them to enter; but appellant pressed on and Adams went out and pushed him back toward the edge of the porch. Thereupon appellant drew an open knife from his overcoat pocket and struck Adams on his upraised hand making a cut 4-1/2 or 5 inches long which went clear to the bone at one place. Dr. Riddle, who treated the wound expressed the

professional opinion that it was made with a sharp edged instrument, and that it was possible but not probable that it could have been made by a broken bottle.

Sid Gore saw the encounter and substantially corroborated Adams as to how it occurred. He said appellant cursed Adams twice as he tried to reenter the store. Monroe Thornton saw appellant after he had stepped up on the porch. His right hand was partly in his overcoat pocket and was holding a knife. He said "I am going in and get the s-b-." He challenged Adams to come out and said he would finish him up.

The appellant's defense was self-defense. For a better understanding of the case we sketch the evidence on this issue. He admitted he and Lee had been drinking and admitted the encounter with Adams, but said he was not drunk. He declared he left the store voluntarily after bumping into the slot machine, and that before he had got off the porch another man, Beda Ashby, came up making a noise as he stamped the snow off his feet. Thereupon, he said, Adams ran out of the store, ordered him (appellant) not to come in, and began to strike and push him backwards toward the edge of the porch. He declared Adams had been drinking, and that he (appellant) was not entering the door but was five or six feet from it when Adams started the trouble. He was not carrying a knife that day and did not go out by the privy after leaving the store. When Adams assaulted him he drew a half-pint empty whiskey bottle from his pocket and struck Adams with it in self-defense. Adams was a larger and heavier man than he, and had pushed him clear down the steps. The appellant was generally corroborated by his companion Richard Lee, by Lonzo Davis, and by Beda Ashby as to stamping the snow off his shoes.

The court gave an Instruction No. 9, on self-defense, as follows:

"The right to defend one's self from danger, not of his own seeking, is a right which the law not only concedes but guarantees to all men. The defendant may, therefore have cut C. B. Adams and still be innocent, of any offense against the law. If at the time defendant cut C. B. Adams, if he did, he, the defendant had reasonable cause to apprehend on the part of C. B. Adams a design to do him some great personal injury, and there was reasonable cause for him to apprehend immediate danger of such apprehended design being accomplished, and to avert such apprehended design he, the defendant, did strike and cut C. B. Adams and at the time he did so, if he did, he had reasonable cause to believe, and did believe it necessary for him to so strike and cut C. B. Adams in the way he did, if he did, to protect himself from such apprehended danger, then, and in that case, such striking and cutting was not felonious, but was justifiable, and you ought to acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should

have been actual or real or that danger should have been impending and immediately about to fall. All·that is necessary is that defendant had reasonable cause to believe and did believe these facts. But before you acquit on the ground of self-defense, you ought to believe that defendant's cause of apprehension was reasonable. *Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you can not acquit in such case, on the ground of self-defense."*

Appellant assails the last sentence of the instruction, which we have italicized, contending that it placed the burden of proof upon him to establish self-defense, whereas he was presumed to be innocent and the burden was on the State to prove beyond a reasonable doubt that he did not act in self-defense. State v. Malone, 327 Mo. 1217, 1227, 39 S. W. (2d) 786, is cited in support of this contention. This Malone case does squarely hold self-defense is not an affirmative defense as to which the defendant has the burden of proof, and condemns an instruction so declaring. But the decision further concedes that where the State's evidence shows a killing by the defendant with a deadly weapon, nothing else appearing, murder in the second degree will be presumed unless evidence is offered to repel that presumption, and the "burden of evidence," or of going forward with evidence, is transferred to the defendant. Of course the same burden would be cast on the defendant where the State's evidence shows a felonious assault not resulting in death, nothing else appearing.

In other words where the State's evidence shows a felonious killing or assault, and nothing more, if the defendant relies upon self-defense for acquital he must adduce evidence substantially tending to prove it; though, if facts of that character are intermingled in the State's evidence the defendant can claim the advantage of them. [State Creighton, 330 Mo. 1176, 1194, 52 S. W. (2d) 556, 562.] The point is, that there must be some substantial evidence of self-defense in the case before it can become an issue. There are numerous decisions holding the defendant is not entitled to an instruction on self-defense unless there is substantial evidence upon which to base it. But where self-defense is an issue, the State has the burden of proving the defendant's guilt beyond a reasonable doubt on that issue the same as any other.

The part of the instruction objected to tells the jury in substance that they are to determine whether facts "have been established by the evidence" showing the appellant had reasonable cause for apprehension of great personal injury from Adams when he cut Adams; and that unless the facts constituting such reasonable cause of apprehension "have been established by the evidence," they cannot acquit

on the ground of self-defense. The instruction does not say such facts must have been shown by the *appellant*; it is not open to attack on that ground. But what does the word "establish" mean? Its first and primary meaning is: "to make stable or firm; to fix immovably or firmly; to settle; conform." And as applied to the proof of a fact or the conclusiveness of evidence, it means: "to prove and cause to be accepted as true; as to establish a fact." [Webster's New International Dictionary (2 Ed.) Unabridged.] This meaning ordinarily has been given to the word by the courts. [3 Words and Phrases (1st Ser.), p. 2471; 2 id. (2nd Ser.), p. 323; 3 id. (3rd Ser.), p. 328.] And hence where it is incumbent on a party to prove a fact only by a preponderance of the evidence, it has often been held error for an instruction to require him to establish the fact, though sometimes when the word is qualified by its context, as where a party is required to establish a fact by a preponderance of the evidence, or by the fair weight of the evidence, its use has been sanctioned. When it is only necessary for a fact to appear from substantial evidence (as distinguished from a scintilla of evidence) what then is the effect of saying such fact must be *established* by the evidence? We cannot convince ourselves that the use of this strong, positive word is not misleading to a jury, and therefore prejudicial error.

By the instruction under review the jury are told before they acquit on the ground of self-defense they ought to believe the appellant's cause of apprehension was reasonable; that they are to determine whether the facts constituting such reasonable cause of apprehension have been established by the evidence; and that unless the facts have been so established they cannot acquit on the ground of self-defense. The law actually is that there need be only a prima facie or substantial showing of the elements of self-defense to raise the issue; and that when the issue is raised the burden rests upon the State to prevail thereon beyond a reasonable doubt. The instruction doubtless was framed on the theory of such cases as State v. Roberts, 294 Mo. 284, 301, 242 S. W. 669, 674, where it was held in an *obiter* ruling that the burden rests upon the defendant to prove any affirmative matter, such as self-defense, to the reasonable satisfaction of the jury. But this decision was overruled by State v. Malone, supra, 327 Mo. 1. c. 1231-2, 39 S. W. (2d) 1. c. 792; and the Malone case is in line with our law on other so-called affirmative or special defenses in criminal cases. [State v. Murphy, 338 Mo. 291, 301, 90 S. W. (2d) 103, 108.]

■ The court gave the jury four blank forms of verdict among which were one for use in case of a conviction of felonious assault without malice aforethought, under Section 4015, Revised Statutes 1929 (Mo. Stat. Ann., p. 2821); and another for use on a conviction for common assault. The punishment under Section 4015 for felonious assault without malice, of which appellant was convicted, is imprisonment in the penitentiary not exceeding five years, or in the county

jail not less than six months, or by a fine not less than $100 and imprisonment in the county jail not less than three months, or by a fine of not less than $100. The form of verdict given by the court for use under this section was as follows: "We, the jury in the above entitled case, find the defendant, Tom Davis, guilty, of felonious assault without malice aforethought as embraced within the charge contained in the information and assess his punishment at imprisonment in the ——— for a term of ——— and a fine of ———."

The punishment under Section 4017, Revised Statutes 1929 (Mo. Stat. Ann., p. 2825), for common assault is a fine not exceeding $100, or imprisonment in the county jail not exceeding six months, or both such fine and imprisonment. The form of verdict given for use under this section was: "We, the jury in the above entitled case, find the defendant, Tom Davis, guilty of common assault as embraced within the charge contained in the information and assess ——— punishment at imprisonment in the County Jail for a term of ——— and a fine of ——— dollars."

It will be observed the form of verdict for guilty of felonious assault without malice aforethought provided for "imprisonment in the ——— for a term of ——— and a fine of ———," whereas the statute permits: (1) either a penitentiary or jail sentence, (2) or a fine and jail sentence (3) or a fine of not less than $100 alone. The form of verdict ran in the conjunctive whereas the statute runs in the disjunctive. Appellant says this was prejudicial error because it would lead the jury to believe they must assess a punishment of both imprisonment and fine when they might desire to impose the latter alone. The same complaint is made of the form of verdict for common assault because it ran in the conjunctive as to an imprisonment in the county jail and a fine, whereas the statute is in the disjunctive. The court gave two other separate instructions correctly stating the punishment for these two offenses under the statutes. We cannot think the jury were misled by the forms of verdict because they rejected the common assault finding altogether and assessed a punishment of imprisonment in the penitentiary for two years without any fine on the felonious assault finding. There is, however, authority for criticizing such forms of verdict, especially where they are misleading or appear to fetter the free discretion of the jury. [State v. Randolph (Mo. Div. 2), 39 S. W. (2d) 769, 773.]

For the error in Instruction 9, aforesaid, the judgment is reversed and the cause remanded. All concur.