Francis LYONS, Plaintiff-Respondent,

v.

Oscar TAYLOR, Defendant-Appellant.

No. 30347.

St. Louis Court of Appeals.

Missouri.

March 15, 1960.

---

Francis R. Stout, Richard M. Stout, St. Louis, for defendant-appellant.

John P. Sullivan, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

This is an appeal from a judgment for $7,000 which a jury unanimously awarded respondent, hereinafter called plaintiff, for personal injuries suffered as a result of a collision at Sarah and Olive Streets in the City of St. Louis, on August 3, 1956, between a tractor (truck) operated by plaintiff and an automobile driven by appellant, hereinafter referred to as defendant. The action was originally brought by one Emig, against Auffenberg Auto Sales, Oscar Taylor, Proctor Sales Co., and Francis Lyons. Lyons filed a crossclaim against Taylor, one of his co-defendants, and, Emig having dismissed his action, this cause was tried upon the crossclaim.

The facts were that plaintiff was operating a cab over engine diesel tractor without trailer attached, on which he had received delivery that afternoon, and was going from his home at 4326 Maryland Avenue to the Mack Motor Company, which was located on Chouteau Avenue, to pick up his automobile. He got on Olive Street at Boyle, and was traveling eastwardly. The time of the collision was between 10:00 P.M. and 11:00 P.M., and it occurred at the intersection of Sarah and Olive Streets. At that intersection, there are stop signs on all four corners.

Concerning the collision, plaintiff testified that there were cars parked alongside the curb on both sides of Olive Street at the place where this collision occurred; that he made his stop at the intersection where the front of his vehicle was 10–12 feet back from Sarah, and traveled that distance, plus the width of Sarah, about 40 feet, plus a few more feet when he saw a car starting to come out of a parking space on his side of the street about four parking spaces from the corner. He gradually reduced his speed from 20 mph to 2–3 mph, and traveled about three car lengths (he estimated a car length at 15–16 ft.) from the time he applied his brakes, and was then struck from the rear, causing an "awful bad jolt." Plaintiff did not collide with the car that pulled out from the curb. He did not notice an automobile coming up behind him. The front end of defendant's automobile struck the center rear of plaintiff's tractor. Plaintiff, when struck, was leaning forward shifting gears, and he was thrown to the rear of the seat and his head was thrown back. After the collision, he started to move his tractor to the curb and, over objection, was allowed to testify that the defendant jumped up on the running board and swung in the window and hit him in the face, on the nose, with his fist. Plaintiff stated that he then decided to leave, and drove east on Olive to Vandeventer, then south on Vandeventer to Lindell, and west on Lindell, heading for the police station on that street. He looked back as he drove away and saw Emig, whom he later learned was a passenger in defendant's car, standing beside the car. He also heard some noises which he was allowed to testify, over objection, sounded like gunshots. As he was driving west on Lindell, he was told to pull over to the curb by a policeman who pulled alongside him. At this time, Emig drove up behind him in the car that had struck him, and the three of them returned to the scene of the accident. When plaintiff returned to the scene, he saw the defendant sitting on the sidewalk. He testified that the whole front of

the car defendant was driving was caved in, and that his tractor was damaged in that the right rear inside tire was cut across the fiber, a taillight and the air tank were smashed, and the copper air lines were jammed all the way up to the compressor. In addition, the edges of the frame were bent in. At the time he was struck, plaintiff was in the right-hand driving lane, Olive Street having one driving and one parking lane on each side of the center line.

On cross-examination, plaintiff testified that there was an officer standing on the corner when the accident took place, who later stopped him on Lindell, but he didn't know his name. He had gotten past Lindell and Sarah, on Lindell, when he was stopped. The exhaustive testimony as to the ownership and registration of plaintiff's tractor, and the vehicles he traded in on the tractor, is not pertinent to this appeal, the plaintiff having abandoned any claim for property damage, and submitting his cause only on his claim for personal injuries. Boyle Avenue, where plaintiff came onto Olive, is two blocks from Sarah Street. Plaintiff stated that he did not pass defendant. Plaintiff's stop was dead at Sarah and he shifted gears, and it was about 65 feet from this stop to where he was when the car pulled out of the parking space in front of him. He was then going 20 mph and was going at approximately that speed when he put on his brakes and slowed to 2–3 mph in the next 50–60 feet, but was still rolling when this accident happened, and had the clutch depressed to shift gears. The width of his tractor from outside to outside of the rear wheels is 8 feet; the A frame sticks out behind the rear wheels about 15 inches and is approximately 4 feet wide. The plaintiff had another person with him at the time of the accident who had applied to him for a job, but he didn't know his name, nor has he ever seen this person since.

Defendant's evidence was that on the date of the accident he was employed by Auffenberg Motors as assistant manager, working on the Gravois lot of that firm, and George Emig, also an employee of that firm, worked on the Natural Bridge lot as a salesman. Defendant had gotten off work at 9:30 P.M., and had driven up to pick up Emig, whom he had previously called, and they had driven over to a cafe at Newstead and Olive Streets to eat. They left the cafe after eating only (having nothing to drink at the cafe, nor did he have anything that evening) at about 11:05 or 11:10 P.M., going east on Boyle. The plaintiff was traveling closely behind him, right on his bumper, and did not pass until defendant stopped at the stop sign at Sarah, when he went around defendant at a speed of 20–30 mph, and got back in front of defendant when defendant was just past the corner of Sarah Street. Defendant testified that when he started up, it appeared to him that plaintiff was going to proceed at that speed, but when defendant got to within 10–15 feet of plaintiff, plaintiff made an abrupt stop; that when the tractor came back in front of defendant, the distance between the two vehicles was about 5–10 feet, and they got as far as 15–20 feet apart. When the vehicles were this distance apart, defendant was traveling 20–30 mph and could stop in 25 feet, including reaction time. Defendant applied his brakes, hearing the squeal of rubber, and reduced his speed before the impact. Contact took place between the part of defendant's car between the headlights and the A frame of the tractor. After the impact, defendant started to get out of his car, and heard the tractor motor revving up and the tractor starting off. He ran after it and caught up with it, swinging up on the running board, and told plaintiff to turn off the key and stop. When plaintiff said "No," defendant reached in the window for the key, and plaintiff pushed him off of the truck. Defendant saw the witness Dolan, a police officer, stop the next passerby and jump in that car and go after the plaintiff and Mr. Emig, who had started up defendant's automobile and had gone after plaintiff. Defendant further testified his car was just like a new auto-

mobile, and that a vehicle equipped with airbrakes could stop about twice as fast as his car equipped with hydraulic brakes. Defendant testified he never struck plaintiff at any time.

On cross-examination, the defendant placed the collision at the point where plaintiff had, and that he was somewhere between the east and west curb line of Sarah when plaintiff went around him. He further testified that he never saw the car plaintiff testified to pull out from the curb, because he could not see around the tractor, and that he could stop his car, going at 20 mph in about 25–35 feet, and at another 10 feet further, if traveling at 30 mph. Defendant was 10–15 feet from plaintiff when he saw plaintiff suddenly stop. He did not remember whether plaintiff's tractor taillight flashed up or not.

The witness Dolan, the investigating police officer, testified that he was about 300 feet away from the collision, and heard it but did not see it. He was asked to tell what "you then observed" and in narrative form, he described hearing the collision, going to the scene, being told that the truck had left the scene, stopping a passing motorist, overtaking the truck and stopping it, asking the driver if he had been involved in a collision, receiving the answer that "someone hit him in the back end, but he didn't think there was much damage. He was taking the tractor home to 4300 Maryland, * * *", entering the tractor, and returning to the scene. As a part of this long narrative answer he stated, "The two drivers discussed the accident and stated they both had insurance and the automobile was a company car, and that they would take it up with their insurance company. They didn't want each other arrested." He noticed indications that Taylor was drinking but he seemed to him "to be normal." Plaintiff made no complaint that he had been hit by anything, and he heard no guns go off. On his report, he stated neither of the drivers had been drinking. Plaintiff told him that he

was completely stopped to allow a car to pull away from the curb.

On cross-examination, Dolan testified that his report shows that plaintiff told him his vehicle went 20 feet from the point of collision. Taylor told him he saw the tractor when he was 10 feet from it, and he was then traveling 30 mph, and got his speed down to 20 mph at which speed he was traveling when he struck the tractor. He saw the hood and front end of Taylor's car smashed in. He saw Emig at the scene, and later was told by Emig that he was employed as a bartender at a tavern at Boyle and Maryland. Dolan further stated that there was another person in the tractor with plaintiff, and that he took his name down at the scene, but did not have it at the time he was testifying.

Appellant's allegations of error are seven-fold, and may be divided into four general categories for the purpose of discussion here. The first of these general categories concerns the admission of certain testimony during the trial. In this respect, appellant urges that the trial court erred in admitting testimony that defendant struck plaintiff in the nose after the accident; that plaintiff believed defendant was drunk, and that plaintiff heard gunshots after the accident. Defendant urges that the admission of such testimony was prejudicial and deprived him of a fair trial because it was not within the scope of the pleadings and was irrelevant. The defendant further urges that the trial court should have declared a mistrial in response to his motion therefor, when plaintiff's attorney charged that defendant was fired because of the accident and for drinking. The defendant also contends that he should have been granted a mistrial because of the testimony of the witness, Dolan, that the parties told him at the scene of the accident that they were covered by insurance.

The second general category of defendant's allegations of error concerns the in-

structions, and in this connection he urges that instruction No. 1 was erroneous and should not have been given for three reasons: (1) there was no evidence of ability of defendant to stop or swerve safely in the distance available to him; (2) if this instruction is founded upon following too closely, such negligence was not pleaded; and (3) because the instruction required action by the defendant, prior to the time that there was discoverable peril.

The defendant also urges error in the giving of plaintiff's burden of proof instruction, No. 2B, in that it required the defendant to establish the contributory negligence of plaintiff by proof.

The third general category of defendant's allegations of error concerns the argument by defendant's counsel, over objection, upon plaintiff's failure to call his own physician.

The fourth general category of defendant's allegations of error concerns the amount of the verdict, which was for $7,000, which the defendant contends was grossly excessive. In this connection also, defendant urges that plaintiff's evidence of injuries was so unsatisfactory that the case should be remanded for failure of proof on this issue.

Defendant's allegations of error concerning the giving of instructions No. 1 and No. 2B will first be considered. Instruction No. 1 reads as follows:

"Instruction No. 1

"The Court instructs the jury that if you find and believe from the evidence that on the 3rd day of August, 1956, plaintiff Francis Lyons was driving the truck mentioned in the evidence eastwardly on Olive Street in its 4000 block, and that defendant Oscar Taylor was driving an automobile eastwardly on Olive Street and to the rear of the truck driven by plaintiff, and that another automobile suddenly pulled away from the south curb on Olive Street and turned into the lane in the forward path of plaintiff's truck and that in order to avoid a collision with said automobile, plaintiff slowly brought his truck to a stop or nearly to a stop, and that after plaintiff's truck had come to a stop or nearly so, defendant's automobile ran into the rear end of plaintiff's truck, and find that in the exercise of the highest degree of care in the operation of his automobile defendant could and should have seen that plaintiff's truck was coming to a stop in time thereafter to have stopped his automobile or slowed it and changed its course of movement and thus have avoided this collision, and that defendant failed to either stop his automobile or to slow it and change its course of movement and that in so failing defendant was negligent and that as a direct result of defendant's negligence in such respects, said collision occurred, and if you find that as a direct result of this collision that plaintiff was caused to sustain bodily injury and that plaintiff was at the time in the exercise of the highest degree of care, then your verdict should be in favor of plaintiff Francis Lyons and against defendant."

Instruction No. 2B reads:

"Instruction No. 2B

"The Court instructs the jury that the mere fact that defendant claims that plaintiff was guilty of contributory negligence, is no evidence that said plaintiff was in fact guilty of contributory negligence.

"Contributory negligence is not in law presumed, but must be established by proof. You are further instructed that on such issue, the burden rests upon the defendant to prove such negligence by the preponderance or greater weight of the credible evidence and further prove that such negligence on the part of the plaintiff directly con-

tributed to cause his said injuries, if any. Unless the defendant has discharged this burden of proof so resting upon him, the Court instructs you that your verdict cannot be in favor of defendant under Instruction No. 2A."

Instruction No. 2B was offered by plaintiff in response to instruction No. 2A, which reads as follows:

"Instruction No. 2A

"The Court instructs the jury that if youfind (sic) and believe from the evidence that on the occasion mentioned in evidence the plaintiff overtook and passed the automobile driven by defendant and turned in front of the path of the automobile driven by defendant, in close and dangerous proximity to the front of said automobile; and ifyou (sic) further find and believe from the evidence that immediately thereafter, and while the back end of the truck driven by plaintiff was still in close and dangerous proximity to the front end of the automobile driven by defendant, and while both of said vehicles were proceeding in an eastwardly direction on Olive Street the plaintiff brought said truck to a sudden stop; and if you further find and believe from the evidence that in so doing the plaintiff failed to exercise the highest degree of care for his own safety and that such failure, if any, of plaintiff caused or contributed to cause the collision mentioned in evidence; then your verdict will be in favor of the defendant."

■ In support of his contention concerning instruction No. 2B, defendant cites State v. Davis, 342 Mo. 594, 116 S.W.2d 110, a criminal prosecution, and Johnson v. St. Louis Public Service Co., Mo., 237 S. W.2d 136. In the latter case, the court distinguished the use of the word "establish" in a criminal case from the use of that word in a civil action. Moreover, the instruction in the Johnson case did not

have the qualifying matter in it found in instruction No. 2B and emphasized above in the instruction. Instruction No. 3 was given by the court and offered by the defendant, and clearly sets out the correct burden of proof. It reads:

"Instruction No. 3

"The Court instructs the jury that the burden is upon the plaintiff to prove his case against the defendant by a preponderance or greater weight of the credible evidence.

"The burden is upon the defendant to prove the defense of contributory negligence by a preponderance or greater weight of the credible evidence.

"By the terms 'preponderance or greater weight of the credible evidence' is meant such evidence as is more convincing to you as worthy of belief than that offered in opposition thereto."

We do not approve of instruction No. 2B as a model by any means, but we think whatever error there was in giving it because of the language used was clearly cured by the other provisions of that instruction and by instruction No. 3. The point is ruled against defendant.

■ Instruction No. 1 submits plaintiff's cause of action upon primary negligence in the disjunctive for failure to (stop) or to slow and change the course of movement. The effect of a disjunctive submission is well settled in this state, and is to require the plaintiff to sustain the burden of producing sufficient competent evidence to make a submissible case on each of the issues so submitted. Whitehead v. Fogelman, Mo.App., 44 S.W.2d 261; Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541, [1]; Martin v. Springfield City Water Co., Mo.App., 128 S.W.2d 674; Gregorc v. Londoff Cocktail Lounge, Mo., 314 S.W.2d 704; compare Block v. Rackers, Mo., 256 S.W.2d 760, loc. cit. 764; Wolf v. Kansas City Tire & Service Co., Mo.App., 257 S.

W.2d 408. The reason for the rule is stated in the above cited cases and is the same as that given in Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756, loc. cit. 760:

"* * * He points out in this connection that since the submission of the various charges was in the disjunctive, it was essential that each and all of such charges should have been supported by the evidence, and not merely that there should have been support for some one or more of them. This for the reason that if the inclusion of any one of such charges was erroneous, whether for lack of evidence to support it or because of vagueness and uncertainty in the manner of submission, the instruction would be necessarily erroneous, since it would be impossible in that situation to tell whether the verdict against plaintiff was founded upon a charge which had been properly or improperly submitted."

Plaintiff impliedly recognizes this rule, but argues that if he obeys this burden as to stopping and slowing, he need not do so as to swerving (changing the course of movement) since "and" appears before that language and it is therefore in the conjunctive.

In Nelson v. O'Leary, Mo., 291 S.W.2d 142, the submission was in the alternative or disjunctive for failure to swerve or to slacken speed and swerve, and the court held loc. cit. 148:

"* * * The second of the alternative submissions in the instruction, that is, 'or by slackening the speed of his said automobile and swerving said automobile to the right'—*a single submission of two acts in combination constituting, in given circumstances, negligent conduct*—was a proper submission in this case wherein there was evidence to support it. Frandeka v. St. Louis Public Service Co., Mo.Sup., 234 S.W.2d 540." (Emphasis added.)

The allegation in the instant case "* * * to have stopped his automobile or slowed it and changed its course of movement * * *" is the same in effect as that in Nelson v. O'Leary, "* * * slackening * * * and swerving * * *." It is not in the conjunctive, but is a single submission of two acts in combination, a compound form which may, in given circumstances, constitute conduct from which negligence could be found by the jury. It follows that plaintiff's evidence must be sufficient to make a submissible case on each of the two disjunctive submissions: (1) failure to stop, or (2) failure to slow and change the course of movement.

In determining the sufficiency of the evidence to warrant the giving of instruction No. 1, the evidence must be viewed in the light most favorable to plaintiff, at whose request the instruction was given, and who received a jury verdict in the trial court. Ferguson v. Betterton, supra, and cases cited loc. cit. 761 of 270 S.W.2d.

There was no evidence offered as to whether or not defendant could have swerved his automobile to the left, and thus have avoided the collision. There was evidence that Olive Street had one parking and one driving lane on each side of the center line, but there was absolutely no testimony as to whether there was approaching traffic or not, or that there was space for defendant to have changed his course to the left. So far as a change to the right is concerned, plaintiff's own evidence was that this third car pulled out from a space about the fourth car parked from the curb, so that defendant could not have changed his course of direction to the right until after he had passed the point from which this third car pulled out, and there is no evidence as to whether there were cars parked in the parking lane to the right after defendant passed that point. A natural inference from plaintiff's earlier testimony that there were cars parked alongside the curb on both sides of the block is that there were cars parked even beyond the point where this third car pulled out.

There must be some evidence from which the jury could find that "in the exercise of the highest degree of care" defendant could have swerved. Of course, he could not be in the exercise of that degree of care, in swerving, if to do so would cause him to run head on into a car proceeding in the opposite direction if he was to change course to the left, or to ram into the side of a parked vehicle if he was to change course to the right.

We have not touched upon the first portion of the disjunctive submission, failure to stop, for the reason that under our holding herein it is not necessary to do so, for the purposes of this appeal. However, it somewhat touches upon the point under discussion, in that plaintiff argues that there was sufficient evidence of stopping distance available to defendant, and that it must follow there was also sufficient distance in which to slow and to change the course of movement. We might agree, assuming, but not deciding, that there was sufficient evidence of available distance for the defendant to have stopped his automobile, that such fact would impel a finding that there was distance in which to slow (see Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S.W.2d 606, loc. cit. 608) and even distance in which to swerve, since there was no direct evidence as to in what distance defendant could have swerved (see Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, loc. cit. 549) but even then we believe there must ·be sufficient evidence that such a swerve could have been made, in the exercise of the highest degree of care, that is, without causing another collision. This evidence was not in this case.

 Plaintiff contends that defendant cannot now complain of instruction No. 1, because defendant adopted that instruction in instruction No. 2C, which was given at defendant's request. That instruction reads:

"Instruction No. 2C

"The Court instructs the jury that if you find and believe from the evi-dence that at the time and place mentioned in the evidence, plaintiff, while driving the truck mentioned in evidence on Olive Street, stopped said truck so close to the automobile driven by defendant that defendant, by the exercise of the highest degree of care on his part, could not avoid striking said truck, *as submitted to you in Instruction No. 1,* then youwill (sic) find the issues for the defendant." (Emphasis added.)

Plaintiff misconstrues the rule upon which he relies. It is true that a party cannot complain of an alleged defect in the opposing party's instruction which is common to his own instruction, but this rule has no application to a contention that the defect is the lack of substantial evidence to support the submission of this part of the plaintiff's disjunctive submission. Moreover, instruction No. 2C is not an adoption of instruction No. 1. The correct test of an instruction is how it will naturally be understood by the average men and women who comprise our juries. See Mo. Digest, Trial, ☞228(1); 1 Raymond on Instructions, § 68, p. 57. When that test is applied to instruction No. 2C, we believe the result is that the italicized portion of that instruction which refers to instruction No. 1 clearly has reference to the acts of stopping or slowing and changing the course of movement contained in that instruction. Instruction No. 2C would read, to the average juror:

"* * * that defendant, by the exercise of the highest degree of care on his part, could not avoid striking said truck (by stopping his automobile or by slowing it and changing the course of its movement) then you will find the issues for the defendant."

When thus read, as we think it must be, it is not an adoption of the defect of lack of substantial proof of plaintiff's disjunctive submission as to changing the course of movement of his automobile, but clearly is in opposition to the plaintiff's submission on instruction No. 1.

Neither can we agree with plaintiff that the verdict was so obviously for the right party, and the evidence of defendant's negligence such as to permit no other result, and that any other result, if it had occurred, should not be allowed to stand. This is not a case where defendant admitted that he could have avoided the collision by stopping or slowing and changing the course of movement of his automobile. Compare Crosby v. St. Louis County Cab Co., Mo.App., 320 S.W.2d 944, loc. cit. 947. In this case, defendant maintained throughout that plaintiff stopped so quickly in front of him that he could not avoid the collision, and the evidence on the point is highly conflicting.

There was not sufficient evidence to support the giving of instruction No. 1 for the reason that the evidence does not substantiate the second (changing the course of movement) of the two acts which are combined into a single disjunctive submission of failure " * * * or to slow it and change its course of movement * * *."

Although this case will presumably be retried, we do not deem it necessary to comment upon all of the points raised in this appeal, because they involve matters which will not necessarily arise again. The allegation of error on the part of the trial court in refusing to permit defendant's counsel to comment in argument to the jury on plaintiff's failure to call his own physician, who had treated him for injuries sustained in another accident that took place in October, 1956, about two months after the accident in evidence, is one that will likely arise upon retrial, and for that reason we will pass upon it here.

The plaintiff testified that his injuries in the October accident resulted from being struck in the rear while he was stopped, and that his injuries from that accident consisted of skinned and bruised knees, elbows, both his right and left shoulders, and his lower back. He testified that he made a claim for those injuries, and that his deposition was taken by the opposing counsel in that case. In that deposition, which defendant's attorney read at this trial, plaintiff stated that he first saw Dr. Fritsch several days after the October accident at Desloge Hospital in St. Louis, Missouri, that his injuries in the October accident were that he was hurt in the right chest near the shoulder, in both legs, his right hand, that he had bruises on both knees, both elbows, his left hand, and his right shoulder, and that these bruises were like floor-burns similar to when one falls and skins his knee; that he was injured "Along in my shoulders, in my neck", that he did have some pain in the shoulder and in his neck, that the pain was in "Both shoulder blades and the neck, in the center of the back, both," and that this pain lasted "A month, five weeks maybe." Dr. Fritsch was testified to be a bone and joint specialist who has an office in East St. Louis, Illinois.

The allegations of plaintiff's injuries in his petition in the instant case were as to his neck, back, spine and vertebrae, and he alleged nagging constant disabling backache, "whip lash injuries", headache, sleeplessness and backache. In his measure of damage instruction, No. 6, plaintiff offered an instruction which told the jury, after requiring them to find the issues in favor of the plaintiff and that he did sustain injuries on the occasion in question, that in determining the amount of such damages, they could take into consideration: (1) physical pain and mental anguish suffered in the past as a direct consequence of his injuries; (2) physical pain and mental anguish plaintiff was reasonably certain to suffer in the future; and (3) the nature, character and extent of plaintiff's injuries.

Dr. Pranger's testimony was that plaintiff's chief complaint was as to his neck, and that, upon examination, he found tenderness over the spine of the seventh cervical vertebra with some muscle guard in the lateral neck with rotation to either right or left. This, the doctor explained as an inhibitory action, to prevent further

motion. He also found tenderness over the vertebral board of both scapula, and on compression of the trapezius muscles on both sides, and that the movement of the neck affects the trapezius muscle. The doctor interpreted X-rays of plaintiff's neck which he had taken, stating that they showed some relaxation of the posterior interspace between the sixth and seventh cervical vertebrae. His testimony was that plaintiff suffered soft tissue injury to the neck and upper back area, and that there was a causal relationship between the accident hypothesized to him and the jury he found. He characterized it as a "whip lash" injury. The doctor further testified that plaintiff informed him of an injury in October of 1956, but gave him no history of any complaint to the neck or back following that injury. The doctor stated that had there been a history of a back injury, it would have been difficult for him to determine which accident caused his neck injury, and that if plaintiff had had a whip lash of the neck resulting from the accident in evidence and suffered another whip lash in the October accident, he would have expected some aggravation of the whip lash effect.

Over objection of plaintiff, defendant was permitted to read to the jury from the petition filed in the suit arising out of the October accident that portion of the petition containing allegations as to how the October accident happened, and the allegations of injuries. These latter allegations included a whip lash injury to plaintiff's neck and spine and injuries to his neck, back, spine and vertebrae.

That portion of the argument by which defendant's counsel attempted to comment upon the failure of Dr. Fritsch to testify is as follows:

"Mr. Stout: * * * The important point isn't how often did Dr. Fritsch see him, however. The important point is, where is Dr. Fritsch today? Where was Dr. Fritsch yesterday and the day before? .

"Mr. Sullivan: I am going to object to that. He had an equal opportunity to bring in Dr. Fritsch. He had opportunity to bring in his own doctor. Trying to create in the minds of the Jury he had no right to doctor—

"The Court: Dr. Fritsch is in East St. Louis and beyond the jurisdiction of this Court.

"Mr. Stout: Plaintiff can take his deposition.

"The Court: So could you. The objection will be sustained.

"Mr. Stout: Dr. Fritsch is not an equally available witness, Your Honor, under the rule in Thayer Versus the Prudential.

"The Court: Sustained. I don't think they are required to take his deposition in a foreign state."

On brief and in oral argument the case counsel referred to was stated to have been misunderstood by the reporter, and was Chavaries v. National Life & Accident Ins. Co. of Tennessee, Mo.App., 110 S.W.2d 790.

The question of whether counsel can comment on the absence of a witness who is outside its territorial jurisdiction and beyond process for that reason is not before us under the facts here presented, and we do not rule that point. The only testimony given on the point was that Dr. Fritsch maintained an office in East St. Louis. There was no testimony given as to where the doctor lived, and there was testimony that he did practice within the court's territorial jurisdiction. This is not sufficient to establish the doctor as one outside of the court's jurisdiction and not amenable to process, yet it is on that ground that the trial court sustained the objection. The question presented to us for ruling is upon the right of opposing counsel to comment upon the absence of a witness who has not been shown to be outside of the court's jurisdiction. Was the

absent witness equally available to both parties? If he was, then no unfavorable inference may be drawn, and no unfavorable comment made by counsel upon the witness' absence. That this is the rule is so clear as to not require citation. When is a witness "equally available"? In the case of Chavaries v. National Life & Accident Ins. Co. of Tennessee, supra, this court held comment by counsel upon a doctor's absence proper, even though the doctor was available to process, stating loc. cit. 794:

"Now the term 'available,' in the sense in which we are using it, does not mean merely available or accessible for the service of a subpoena, since any witness who can be found may be subpoenaed at the instance of either party to a cause. To the contrary, the question of whether a witness is 'available' to one or the other of the contending parties depends upon such matters as the one party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case, and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of the one party and against the other. In other words, a witness may be said to have been peculiarly 'available' to one party to an action, so that upon that party's failure to have produced him in court an inference will arise that his testimony would have been unfavorable, when, because of such party's opportunity for knowledge of or control over the witness, or the community of interest between the two, or the prior statements and declarations of the witness, it would be reasonably probable that the witness would have been called to the trial to testify for such party except

for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable. Huskey v. Metropolitan Life Insurance Co., Mo.App., 94 S.W.2d 1075; Cooper v. Metropolitan Life Insurance Co., Mo.App., 94 S.W.2d 1070; Donet v. Prudential Insurance Company of America, Mo.App., 23 S.W.2d 1104.

"In this instance it is true that Dr. Mansifee might have been subpoenaed by defendant, and it is also true that in view of the waiver of privilege theretofore executed by the insured there could have been no objection interposed to his being asked to reveal the information he had acquired by virtue of the relationship of physician and patient existing between him and the insured. But this is far from saying that Dr. Mansifee was equally available to defendant as to plaintiff."

This same excerpt is quoted with approval in In re Warden, 347 Mo. 196, 146 S.W.2d 874, loc. cit. 888; and State v. Collins, 350 Mo. 291, 165 S.W.2d 647, loc. cit. 649. To the same effect, see Stallings v. Bone, Mo.App., 327 S.W.2d 513, at page 517; Blick v. Nickel Savings, Investment & Building Ass'n, Mo., 216 S.W.2d 509; Deaver v. St. Louis Public Service Co., Mo.App., 199 S.W.2d 83; and see Wigmore on Evidence, 3rd Edition, §§ 286–288, pp. 166–171; Mo. Digest, Trial, ■■■■ Appeal and Error, ■■■■ and Evidence, ■■■■

Dr. Fritsch was not "equally available" to both the defendant and the plaintiff.

Comparing the testimony before them, as given by Dr. Pranger and the plaintiff as to the plaintiff's injuries in this accident, with the testimony they heard as read to them from the pleadings in the case arising out of the October accident, the jury could clearly arrive at the decision that the injuries which the plaintiff suffered in the two accidents were substantially the same. Add to this the fact that plaintiff testified

he did not see a doctor for treatment of the injuries he suffered in the August accident, and that Dr. Fritsch was the only person he saw as a result of the injuries he suffered in the October accident, and we believe the inference was clearly available to the jury that had Dr. Fritsch been called, his testimony would have had a bearing on whether or not the October accident caused the neck injury plaintiff claimed was suffered in the August accident. Dr. Fritsch's testimony, therefore, was pertinent and material to the issues in the instant case.

It follows that under the facts of this case, the trial court was in error when it sustained the plaintiff's objection to defendant's attempt to argue to the jury any inference to be drawn from the failure of Dr. Fritsch to testify.

For the reasons herein stated, the Commissioner recommends that the judgment be reversed, and the cause remanded.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court.

The judgment is therefore reversed, and the cause remanded.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.