**STATE of Missouri, Respondent,**

v.

**Virginia C. RANDALL, Appellant.**

**No. 56716.**

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Yocom & Gordon, Robert E. Yocom, Pineville, for appellant.

WELBORN, Commissioner.

Appeal from court-fixed 20-year sentence for murder, second degree, after jury found appellant guilty of such offense, but could not agree upon punishment.

At approximately 1:00 A.M., August 19, 1970, Russel Rolland Randall was shot, while in his residence in Seneca, Missouri. The .22 caliber bullet which struck him caused his death almost instantly. The weapon from which the bullet was fired was, according to the state's evidence, in the

hands of the appellant, Virginia C. Randall, the wife of the deceased. The death of Russel was the culmination of a stormy 18-year marriage to the appellant. According to Diane Taylor, appellant's 21-year-old daughter by a prior marriage, the couple had been engaged in argument and bickering for several days. Russel had entered the house shortly before the shooting. Her mother got up and left the bedroom in which she and Diane were sleeping. Diane heard her mother "holler" at Russel: "Get out. I know what you've done. Get out." Diane got out of bed and went toward the kitchen. She saw her mother holding a gun and "hollered": "Mother, no." Then she heard the gun go off. Russel, whose back was toward appellant, took a couple of steps and fell. Diane testified that she was 10 to 12 feet from where her mother was standing and that her mother was holding the gun against herself but not aiming it.

Steven Randall, the 15-year-old son of appellant and Russel, testified that two days before the shooting his mother had told him that she was going to kill him "that night for what he had said and things that he had done." When Steven returned to the house some 30 minutes after the shooting, appellant wanted him "to forgive her for what she had done, she didn't mean to kill him, she only meant to scare him."

Testifying in her own behalf, appellant related a series of beatings and physical mistreatment at the hands of her husband, including an incident in 1969 when he held a pistol to her head and threatened to kill her. Some of the children witnessed that incident.

According to appellant, she had gone to Nevada with her daughter on Tuesday, apparently to the state hospital. She returned about 5:00 P.M. and when she entered the house, Russel said:

" 'What are you doing back?' 'I had them take you up there because I wanted you locked up, put behind doors. What the God damn hell are you doing back here?

* * * Any whore like you doesn't deserve to be out in public, and what the hell is that doctor's name, I want to call him?' I said, 'Russel, the doctor said I was all right.' * * * I went to him, I told him I had gone so far as to go to Nevada to get them to say that I was all right in hopes that our marriage—for the kids' sake we could patch things up; and he said, 'It could never be patched up and I am going to treat you like dirt if you stay here, so you get in there and iron my pants and shirt because I have to go to Joplin. I am going to sell the store.' "

She ironed Russel's clothing and he left. She loaded the gun because she was afraid of Russel.

" * * * I had called my dad to see if he would come get me or I was going to the church to spend the night because I was afraid he would come back that night to kill me. * * * He came back. Diane said, 'It's only Dad; he is not going to hurt you.' I said, 'Diane, you know he is going to hurt me, and I am afraid.' She said, 'Stay here and eveything will be all right.' I went to get some medicine. I said, 'I am going to get an aspirin.' He came back through the door. He had an alarm clock in his hand. He said, 'I will throw this through you— * * * I will give you some more of what you got,' and I went to get the gun because if he came toward me, my intention was not to shoot him; I was going to hit him over the head. Diane ran out of the bedroom at that time, fell against the gun. I lost my balance, and that gun went off and I didn't know it hit him."

In his opening statement to the jury, appellant's employed counsel stated that the defense would show that appellant acted in self-defense. The trial court instructed on first degree murder, second degree murder, and manslaughter. An instruction on self-defense was given.

The jury verdict was returned on January 25, 1971. Without request by appellant's attorney, the trial court gave defendant until February 11 to file a motion for new

trial. On January 29, defendant notified her attorney that he was discharged. On the evening of February 9, appellant employed the attorneys who represent her on this appeal. Those attorneys appeared before the circuit court on February 11 and requested a further extension of time for filing a motion for new trial. See Supreme Court Rule 27.20(a), V.A.M.R. The extension was denied and a motion for new trial was filed. A hearing was subsequently held on the motion for new trial and it was overruled. This appeal followed.

On this appeal, appellant urges as error the trial court's refusal to extend the period for filing a motion for new trial, contending that the time available to the present counsel was inadequate to permit them to familiarize themselves with the case. Appellant also advances a claim of inadequate assistance of trial counsel. The disposition made of this appeal renders direct discussion of these grounds unnecessary.

■ The trial court gave a self-defense instruction. The instruction contained the precise language found objectionable in instructions on the subject held erroneous in State v. Davis, 342 Mo. 594, 116 S.W.2d 110, and State v. Robinson, Mo.Sup., 255 S.W.2d 798. The attorney general makes no effort to defend the instruction. Instead, he relies upon the failure to raise such question in the motion for new trial. In the circumstances of this case, the plain error rule, Supreme Court Rule 27.20(c), V.A.M.R., is particularly appropriate and the error will not be disregarded because it was not included in the motion for new trial.

■ The alternative argument of the attorney general is that there was no error in the giving of the instruction because the evidence did not warrant a self-defense instruction. Pointing to the testimony of appellant, respondent argues that it showed only a defense of accident[1], inconsistent with self-defense (State v. Peal, Mo.Sup., 463 S.W.2d 840), and, therefore, no prejudice could have arisen from the erroneous instruction.

■ There is no question that the thrust of the defense testimony was designed to show that the defendant was in fear of danger of great bodily harm at the hands of the deceased. The defense of self-defense was raised in the opening statement of defense counsel. The state's rebuttal testimony was aimed largely at refuting the defense. The court gave an instruction on the issue. The issue was argued to the jury, even to the extent that the prosecutor read to the jury the objectionable portion of the instruction. The state, having accepted the defense on the trial, may not now inconsistently urge that it was never in the case and support the argument of no prejudicial error on that basis. See State v. Randazzo, 318 Mo. 761, 300 S.W. 755, 757–758[5].

The self-defense instruction was erroneous and prejudicial.

Reversed and remanded.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.

1. The trial court did not instruct on accident. Such failure, when the evidence calls for the instruction, has been found to be plain error. State v. Haygood, Mo. Sup., 411 S.W.2d 230.