STATE of Missouri, Respondent,

v.

Otis JACKSON, Appellant.

No. 57877.

Supreme Court of Missouri,
Division No. 1.

July 22, 1974.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Asst. Atty. Gen., Jefferson City, for respondent.

David G. Dempsey, Dempsey, Dempsey & McCarthy, Gary J. Morris, Carp & Morris, Clayton, for defendant-appellant.

WELBORN, Commissioner.

Appeal from judgment of conviction and sentence of life imprisonment on verdict of jury finding appellant guilty of murder in the first degree.

In September, 1971, appellant Otis Jackson was the owner of a bar, known as Jack's House, located at Spring and St. Louis Avenue in St. Louis. At around 1:15 A.M. on September 23, 1971, the bar had been closed and the patrons had left. The barmaid, Shirley Weber, a waitress, Charlene Dickerson, a porter known as "Porky," another employee, Hank Daues, and Eugene Helm remained on the premises. Helm, known as "Geno the Psycho," had worked at the bar on Wednesdays for about five months as a "record spinner."

Jackson told Shirley Weber to pay Geno $20 for his services that night and take the

money from the cash register. A cash register ticket showed a $1.70 charge to Geno and that amount was deducted from the $20 and the barmaid started to hand Geno $18.30. Jackson said that Geno owed him $2.00 from an earlier transaction and took that amount from the money as the barmaid handed it to Geno.

Jackson and Geno began to argue about the $2.00. Jackson was behind the bar and Geno was on the customer side. Each used profanity but neither the barmaid nor the waitress could recount any of the language used. According to the barmaid, she looked around and saw that Jackson had a 30-30 rifle in his hands. She told the waitress, "We better get out of here" and jumped over the bar and went out the front door of the tavern. Just as she got outside, she heard a shot fired. The barmaid heard Geno voice no threat against Jackson and saw him make no move toward Jackson.

The waitress, Charlene Dickerson, heard the argument and then saw Jackson crouched over the bar, pointing a gun at Geno. The waitress said the gun had been kept behind the bar. When the barmaid left, Charlene crouched in a corner near the door, still looking at Jackson and Geno. She saw the shot fired and left to get someone to call the police. She also stated that she heard no threat by Geno against defendant and did not see him move toward the defendant.

Earline Griffin had been a patron of the bar earlier in the evening. She had returned at around 1:30 A.M. to get her coat and saw Charlene outside the tavern. Charlene told her that Jackson had shot Geno. Earline went in and saw Jackson behind the bar and Geno crouched at the bar. According to Earline, Geno fell to the floor and started crawling. Jackson said "Get up m_____ f_____ and get out of the place." Geno said, "I am trying, Jack," and crawled to the door. Jackson came from behind the bar, still carrying the rifle, and grabbed Geno by the arm and dragged him out the door and threw him on the sidewalk.

Charlene Dickerson stated that after Geno got outside, she asked Jackson to let her call the police. Jackson gave her $10 and said, "Here, take this money and get him away from here. I don't give a damn how you get him to the hospital."

Police were called and arrived at the scene and arrested Jackson. Geno was taken to the hospital where he died of a hemorrhage resulting from the gunshot wound which severed the iliac artery.

The evidence showed that Geno was 28 years of age, six feet three inches tall, and weighed approximately 210 pounds. Analysis of a sample of his blood taken at the hospital showed an alcoholic content of .15%. There was other evidence that Geno had been drinking that evening.

Testifying in his own behalf, Jackson stated that he paid Geno $20 for his services for the evening, deducting the $1.70 shown on the cash register tape. He noticed another tape for $2.00 and deducted that amount also. He went from behind the bar and cut off the juke box. When he returned, he heard this "mumble jumbling" from Geno at the bar. He became aware the Geno was complaining about not owing the $2.00. At first his language was not "out of the ordinary," but "it built up momentum as it went along." After about three minutes of verbal abuse from Geno from a distance of 12 to 14 feet, Jackson picked up the gun when Geno started advancing toward him and told Geno not to come up on him. Geno hesitated momentarily and then said: "You got a gun but I ain't scared of you. I ain't scared of anything. You are going to have to kill me." Geno kept advancing and Jackson kept saying, "Go ahead; go ahead." "This was all I could say. I was what you call pleading with the man to just go ahead, just to be left alone." When Geno continued to advance and was within seven feet, Jackson fired at him.

Jackson testified that "Porky" and Charles Ross, a patron who had returned after the shooting, helped Geno to the sidewalk. Ross so testified, but "Porky's" whereabouts were unknown at the trial. There was evidence that Daues was present when the argument began and attempted to placate Geno by offering to give him $2.00. Daues left before the shooting and did not testify.

Instructions were given to the jury on murder in the first degree, murder in the second degree, manslaughter and self-defense. The jury found Jackson guilty of murder in the first degree.

Appellant attacks the submissibility of the first degree murder charge, alleging that the killing occurred during a heated quarrel, without antecedent hostility. Appellant contends that the circumstances show that the killing was not "in cold blood," but under the influence of immediate anger, and that, therefore, the element of deliberation was not shown.

■ Deliberation is, of course, the element that distinguishes first degree from second degree murder. § 559.010, RSMo 1969, V.A.M.S. Deliberation for purposes of this offense means that the defendant "considered the matter of taking another's life in a 'cool state of the blood,' or with a 'cool and deliberate state of mind.'" State v. Marston, 479 S.W.2d 481, 484[4, 5] (Mo.1972). "Under the authorities it appears that a finding of deliberation depends not so much upon the time element as it does upon an inference, reasonably drawn from the evidence, that the defendant performed the act in a cool and deliberate state of mind." State v. Davis, 400 S.W.2d 141, 146 (Mo.1966).

■ Viewing the evidence here favorably to the verdict, defendant, in the course of a quarrel in which he and the deceased exchanged epithets, and in which the deceased made no aggressive move against defendant, obtained a 30-30 rifle, placed it on the bar, and when the argument continued fired the rifle at the victim, the bullet striking him and causing his death. This evidence was sufficient to put the issue of deliberation before the jury and to permit the jury to find that defendant acted deliberately. State v. Cheek, 413 S.W.2d 231, 235[2] (Mo.1967); State v. Small, 344 S.W.2d 49 (Mo.1961); State v. Davis, 400 S.W.2d 141 (Mo.1966).

The defendant's own testimony which may be considered in determining the submissibility issue, inasmuch as defendant did not stand on his motion to dismiss at the close of the state's case, was that the argument was a one-sided affair, with Geno heaping abuse on him but with appellant merely requesting Geno to leave.

Cases relied upon by appellant are primarily those which hold that in a situation such as that involved in this case, a second degree murder instruction is required. That problem is not here presented since the court did instruct on murder in the second degree. Cases relied upon by appellant, such as State v. McNeal, 237 S.W. 738 (Mo.1922); State v. Jackson, 344 Mo. 1055, 130 S.W.2d 595 (1939), and State v. Liolios, 285 Mo. 1, 225 S.W. 941 (1920), all involved reversals of conviction of first degree murder for failure to instruct on second degree murder. None, however, held the charge of murder in the first degree to have been improperly submitted. Consideration of the second degree murder question in those cases related, necessarily, to the particular facts involved. In Jackson, for example, the court recited testimony that the defendant was "mad," "trembling" and "[had] a stare in his eyes" as evidencing an issue of lack of "cool blood." 130 S.W.2d 597. In McNeal, the court recited briefly a state of facts which would have supported a finding only of second degree murder. The case does not hold that a preliminary argument between the victim and the defendant precludes a finding of deliberation. Liolios involved an encounter between the defendant and his unfaithful wife.

Here, there was obviously evidence from which the jury could have found appellant guilty of murder in the second degree. However, the evidence also warranted the first degree submission.

■ Error is predicated on rulings relating to alleged improper argument by the assistant circuit attorney. Appellant asserts that in his closing argument, the prosecutor went beyond the record in four instances. First, he argued that a state's rebuttal witness had testified that Jackson told him that he asked the other employees to leave before the shooting. The transcript shows no objection to this argument, nor is reference made to it in the motion for new trial. Therefore, no proper foundation has been laid for presentation of the matter on this appeal. State v. Clark, 412 S.W.2d 493, 497[5–8] (Mo.1967); State v. Martin, 484 S.W.2d 179, 180[1] (Mo.1972).

■ The second objection relates to argument based upon appellant's place of residence, which did not appear in the record. Appellant testified that he had the gun at the bar because he carried money home when he left the bar. The prosecutor attempted to deflate this testimony by arguing that appellant lived upstairs, stating "He (appellant) testified he lived at 3646a St. Louis and Jack's House is underneath, 3646 St. Louis." When defense counsel correctly objected that there was no evidence of that, the trial court stated: "The jury will be guided solely by the evidence it has heard from the stand." The trial court's response was adequate in view of the objection and the absence of request for any further relief precludes the conclusion that such ruling affords the basis for a new trial. State v. Coleman, 441 S.W.2d 46, 54[16] (Mo.1969).

■ Appellant next objects to the statement of the prosecutor that, under Illinois law, an alcohol blood content of .10 is evidence of intoxication. The trial court sustained objection to this statement and or-dered it stricken. Appellant received all of the relief he requested.

■ Finally, the prosecutor argued that when appellant ordered Geno dragged from the bar after the shooting, his only concern was "Don't let me lose my license; get him out of my place." Objection that there was no evidence to support such statement was sustained. The prosecutor continued, acknowledging that there was no direct evidence of defendant's concern for his license. Defense counsel's objection, "[I]t is improper," was overruled. The argument was not a repetition of the argument to which objection had been sustained and the trial court's ruling was not error.

■ Appellant urges error in the trial court's overruling objections to argument of the prosecutor calling appellant "a liar and a perjurer and a killer" and arguing that appellant "cared less about [Geno] than to shoot a dog." No objection to such rulings appears in appellant's motion for new trial. Therefore, the matters have not been preserved for appellate review. State v. Raspberry, 452 S.W.2d 169, 172[1] (Mo.1970).

■ Appellant urges that regardless of the procedural problems presented by his complaints against the prosecutor's argument, the prejudicial effect of the argument, in its entirety, should be considered under the plain error rule. Rule 27.20(c). Because control of argument is primarily the function of the trial court, this court is not prone to examine complaints regarding the matter not properly brought to the trial court's attention. State v. Agee, 474 S.W. 2d 817, 820[9, 10] (Mo.1971); State v. Kilgore, 447 S.W.2d 544, 547–548[5] (Mo. 1969). Insofar as the argument now objected to is unsupported by the evidence is concerned, appellant generally got the relief he requested in the trial court. Insofar as the argument characterized defendant and his attitude, the argument was

based upon matters in evidence and does not afford any grounds for concluding that substantial rights of appellant were infringed. State v. Schneiders, 259 Mo. 319, 168 S.W. 604, 608 (Mo.1914).

■ Appellant asserts as plain error the language of the instruction submitting murder in the second degree and manslaughter on the grounds that the second degree instruction called for the jury's attention to that offense if they found the defendant not guilty of murder in the first degree and the manslaughter instruction called for similar prior consideration of first and second degree murder. This assignment of error presents no question cognizable under the plain error rule. In fact, the method attacked has received approval of this court. State v. Hacker, 214 S.W.2d 413, 416[9, 10] (Mo.1948). See MAI–CR 2.05.

■ Appellant's final assignment of error requests this court to reverse the judgment below, under the plain error rule, because the self-defense instruction is identical with that condemned in State v. Minnis, 486 S.W.2d 280 (Mo.1972), as putting upon the defendant the burden of proof on the issue of self-defense. No objection to the instruction was made in the trial court. Appellant invokes the plain error rule in view of the fact that Minnis was decided September 25, 1972, and the sentence in this case was imposed April 17, 1972.

The attorney general would disregard this claim for the reason that a self-defense instruction was requested by the appellant. Whether he actually offered the instruction in the form in which it was given is not clear, but, in any event, self-defense is one of the matters, when present, upon which the trial court was obliged to give a correct instruction, without regard for the request of the defendant. MAI–CR now takes care of this problem.

The respondent also suggests that errors in instructions are not subject to review under the plain error rule. In State v. Tindall, 496 S.W.2d 267 (Mo.App.1973), the Kansas City District of the Court of Appeals reviewed a claim of the nature here advanced, stating that the plain error rule was " 'particularly appropriate', State v. Randall, 476 S.W.2d 593 (Mo.1972), and that the alleged error directly involves the constitutionally guaranteed rights of the defendant to a fair trial." 496 S.W.2d 268.

In this case, support for the self-defense theory must be found primarily in appellant's own testimony. The state's witnesses testified to no threats or offensive act upon the part of the deceased. Appellant's testimony was that Geno did not threaten him. Appellant acknowledged that Geno was unarmed, and he was aware of that fact. He did testify that Geno said: "You got a gun but I ain't scared of you. I ain't scared of anything. You are going to have to kill me," and that as Geno said this he steadily advanced toward him. On cross-examination, defendant stated that he was "in fear" during the argument with Geno. In rebuttal, a state's witness, a police officer who questioned appellant after the incident, testified that appellant told him: "He thought he was going to get hurt."

In these circumstances, the erroneous self-defense instruction was harmless error. In the case of State v. Parker, 403 S.W.2d 623, 627 (Mo.1966), the court stated:

" 'The right to kill in self-defense is founded in necessity, real or apparent' (26 Am.Jur. [Homicide], § 137, p. 249) and before such extreme measure may be lawfully resorted to the record must show that the appellant acted 'under at least an apparent necessity, in order to save himself from death or great bodily harm.' 40 C.J.S. Homicide § 114, p. 983; State v. Page, Mo., 130 S.W.2d 520, 523. Insofar as material to this case, the language of the *justifiable homicide* statute is that 'Homicide shall be deemed justifiable when committed by any person in either of the following

cases: * * * (2) When committed in the lawful defense of such person * * when there shall be reasonable cause to apprehend a design * * * to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished.' RSMo1959, § 559.040(2), V.A.M.S. Under the general rules and the statute reasonable cause and necessity are to be viewed in the light of the circumstances as they appeared to the defendant. 40 C.J.S. Homicide § 126, p. 1003. But there must have been some act or demonstration on the part of the deceased inducing a reasonable belief that the defendant is about to suffer great bodily harm (26 Am.Jur. § 142, p. 255), some overt act of presenting or drawing— 'Where the deceased has acted in such manner as to induce a reasonable belief that he is preparing or attempting to use a deadly weapon, such action will constitute sufficient ground for apprehension of danger to justify the defendant in taking extreme measures in self-defense, but this rule will not apply where there is no reasonable ground for apprehending immediate danger.' 1 Warren, Homicide, § 155, p. 740. With these general rules in view as background '(a) 11 of the attendant facts are important in determining whether the killing of a person by the accused was done in self-defense.' 26 Am.Jur. § 142, p. 255.

"The essentially substantive evidence adduced by the state had been noted and in it there are no circumstances that would justify the hypothesization of a justifiable killing. In this particular case there were no threats (State v. McGee, 361 Mo. 309, 315–316, 234 S.W.2d 587, 591), the only relevant circumstance established from the state's witnesses was Sterling's size and strength but on that score the appellant had no more to apprehend than another simple assault and battery (40 C.J.S. Homicide § 123a, p. 999) and that alone would not justify a killing in self-defense. And, it should be noted, no gun or other weapon was found on Sterling."

Here, in contrast with Parker, the defendant did testify. He stated merely, however, that he was "in fear" and "thought he was going to get hurt." Those expressions did not demonstrate a fear of great personal injury, a prerequisite to a valid self-defense issue. As in Parker, the most that has been demonstrated was apprehension of a "simple assault and battery." Therefore, any error in the self-defense instruction was harmless error.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.